**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

------------------------------------------------------------------- x
                                         :

PATRICIA HOLTZ, AUNT MARLENE         :
FOUNDATION, and STEVEN GREENSPON,   :
individually and on behalf of all others similarly   :
situated,                                       :
                                               :

                         Plaintiffs,      :   Case No. 1:12-CV-07080
                                               :

          vs.                               :   Hon. John W. Darrah
                                               :

JPMORGAN CHASE & CO. and CHASE       :
INVESTMENT SERVICES CORP.,           :
                                               :

                         Defendants.     :
                                               :

------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS THE CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................ 1

BACKGROUND ............................................................................. 4

ARGUMENT .................................................................................. 7

I.       THE COMPLAINT SHOULD BE DISMISSED UNDER SLUSA ...................... 7

      A.       The Complaint Alleges a Covered Class Action Based upon State Common Law and Involves a "Covered Security" as Defined Under SLUSA ........................................................................ 8

      B.       The Complaint Alleges Misrepresentations, Omissions or Manipulative or Deceptive Devices or Contrivances in Connection with the Purchase or Sale of a Covered Security ....................................... 9

           1.       The Complaint Alleges Material Misrepresentations, Omissions or Manipulative or Deceptive Devices Sufficient To Satisfy SLUSA .......................................................... 9

                a.       The Fraudulent Scheme, Misrepresentations and Omissions Alleged Are Covered by SLUSA Under the Seventh Circuit's Decision in *Brown v. Calamos* ............. 11

                b.       The Allegations in this Lawsuit Are Similar to Allegations in Cases that Routinely Have Been Dismissed Under SLUSA .................................................. 13

           2.       The Material Misstatements, Omissions or Manipulative or Deceptive Devices Were "In Connection With" the Purchase or Sale of a Covered Security ......................................... 14

II.       PLAINTIFFS' STATE LAW ALLEGATIONS SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............................................... 16

      A.       Plaintiffs Have Failed To Allege the Elements of Breach of Contract (Count I) ................................................................... 16

           1.       Plaintiffs Have Failed To Identify a Contract ............................... 17

           2.       Plaintiffs Have Failed To Plead a Breach of a Contract ................ 18

           3.       Plaintiffs Have Failed To Adequately Plead Damages ................. 18

B. Plaintiffs Have Failed To State a Claim for Breach of Fiduciary Duty (Count II) ........................................................................................ 19

1. Plaintiffs' Claim for Breach of Fiduciary Duty Is Duplicative ..................................................................................20

2. Plaintiffs Have Failed To Plead the Elements of a Breach of Fiduciary Duty ..............................................................................21

C. Plaintiffs Have Failed To State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count I) and for Unjust Enrichment (Count III) .......................................................................... 22

III. PLAINTIFFS' CLAIMS AGAINST DEFENDANT JPMORGAN CHASE SHOULD BE DISMISSED FOR LACK OF STANDING ................................. 23

CONCLUSION ......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Ahead Realty LLC v. India House, Inc.,* 92 A.D.3d 424 (N.Y. App. Div. 2012) ........................ 22

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009).................................. 23

*Ashcroft v. Iqbal*, 556. U.S. 662 (2009) ...................................................................................... 16

*Ballentine v. United States*, 486 F.3d 806 (3d Cir. 2007) ............................................................ 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 16

*Berman v. Sugo LLC*, 580 F. Supp. 2d 191 (S.D.N.Y. 2008) ....................................................... 18

*Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, Nos. 02 C 0978, 02 C 3436, 2003 WL 151929 (N.D. Ill. Jan. 21, 2003) ................................................................ 16

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007) ....................................... 16

*Brooks v. Key Trust Co. Nat'l Ass'n*, 26 A.D.3d 628 (N.Y. App. Div. 2006)............................... 20

*Brown v. Calamos*, 664 F.3d 123 (7th Cir. 2011).................................................................. passim

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007) ....................................... 24

*Celle v. Barclays Bank P.L.C.*, 48 A.D.3d 301, 302 (N.Y. App. Div. 2008) ............................... 21

*City of Peekskill v. Continental Ins. Co.*, 166 F.3d 1199 (2d Cir. 1998) ...................................... 19

*Cramer v. Spada*, 610 N.Y.S.2d 662 (N.Y. App. Div. 1994) ....................................................... 19

*Dudley v. Putnam Int'l Equity Fund*, Civ. No. 10-328-GPM, 2010 WL 1838255 (S.D. Ill. May 5, 2010) ............................................................................................... 8

*Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684 (S.D.N.Y. 2006) ................................................................................................................... 9, 14

*Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305 A.D.2d 268 (N.Y. App. Div. 2003) ................................................................................................................. 20, 21

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73 (2d Cir. 2002) ................................. 22

*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) ........................................................... 4

*Howell v. Am. Airlines, Inc.*, No. 05-CV-3628 (SLT), 2006 WL 3681144 (E.D.N.Y. Dec. 11, 2006) ......................................................................................... 17

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and
Prods. Liab. Litig.*, 826 F. Supp. 2d 1180 (C.D. Cal. 2011) .................................................. 25

*Int'l Bus. Machs. Corp. v. Dale*, No. 7:11-cv-951 (VB), 2011 WL 4012399
(S.D.N.Y. Sept. 9, 2011) ......................................................................................... 19

*James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296 (E.D.N.Y. 2012) ................................. 18

*Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 244 (D. Del. 2009) ................................................ 24

*Jorling v. Anthem, Inc*, 836 F. Supp. 2d 821 (S.D. Ind. 2011) .......................................... 2, 12, 13

*JP Morgan Chase v. J.H. Elec. of NY, Inc.*, 69 A.D.3d 802 (N.Y. App. Div. 2010).................... 17

*Kircher v. Putnam Funds Trust*, 403 F.3d 478 (7th Cir. 2005) ................................................ 8, 9

*Kutten v. Bank of America, N.A.*, Civ. No. 06-0937 (PAM), 2007 WL 2485001
(E.D. Mo. 2007) ......................................................................................................... 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................... 23

*Merrill Lynch, Pierce, Fenner, and Smith Inc. v. Dabit*, 547 U.S. 71 (2006) ........................... 14

*Moscato v. Tie Techs., Inc.*, Civ. No. 04-2487 (GBD), 2005 WL 146806
(S.D.N.Y. Jan. 21, 2005).............................................................................................. 22

*Ostrolenk Faber LLP v. Unigene Labs., Inc.*, No. 12 Civ. 3991(HB), 2012 WL
3114742 (S.D.N.Y. Aug. 1, 2012) ................................................................................ 17

*Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692 (S.D. Ill. 2007) .............................................. 13

*Richek v. Bank of America, N.A.*, No. 10-cv-6779, 2011 WL 3421512 (N.D. Ill.
Aug. 4, 2011) ......................................................................................................... 9, 15

*Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005) ..................................... 15

*S.C. Rabin v. JPMorgan Chase Bank, N.A.*, No. 06 C 5452, 2007 WL 2295795
(N.D. Ill. Aug. 3, 2007).............................................................................................. 14

*SEC v. Zanford*, 535 U.S. 813 (2002) ..................................................................................... 15

*Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir. 2009)....................................... 12, 13, 14

*Sheehy v. New Century Mtg. Corp.*, 690 F. Supp. 2d 51 (E.D.N.Y. 2010).................................. 21

*Siepel v. Bank of America, N.A.*, 239 F.R.D. 558 (E.D. Mo. 2006)............................................ 14

*Spencer v. Wachovia Bank, N.A.*, No. 05-81016, 2006 WL 3408043 (S.D. Fla.
May 10, 2006)........................................................................................................... 14

*Tralins v. JPMorgan Chase & Co.*, No. 0652448/2012 (N.Y. Sup. Ct. removed Aug. 3, 2012) ........................................................................................................ 1

*Unclaimed Prop. Recovery Serv., Inc. v. UBS PaineWebber Inc.,* 870 N.Y.S.2d 361 (N.Y. App. Div. 2009) .................................................................................... 22

*United Phosphorus v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003)................................ 4

*Wells Fargo Bank v. Superior Court,* 71 Cal. Rptr. 3d 506 (Cal. Ct. App. 2008)........................ 14

*Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*, 939 N.Y.S.2d 745, 2011 WL 5962804 (N.Y. App. Div. 2012) .......................................................................... 23

## STATUTES

15 U.S.C. § 77p(b) ........................................................................................................ 7, 8, 9

15 U.S.C. § 77p(f)(2) ............................................................................................................ 8

15 U.S.C. § 77p(f)(3) ............................................................................................................ 8

15 U.S.C. § 77r(b) ................................................................................................................. 8

FRCP 12(b)(1) .............................................................................................................. 1, 4, 7

FRCP 12(b)(6) ................................................................................................................. 1, 7

Defendants JPMorgan Chase & Co. ("JPMorgan Chase") and Chase Investment Services

Corp. ("CISC" and, together, "Defendants") respectfully submit this memorandum of law in

support of their motion to dismiss Plaintiffs' Class Action Complaint (the "Complaint") pursuant

to Rules 12(b)(1) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Defendants JPMorgan Chase and CISC move to dismiss the Complaint on three distinct

grounds. First, the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") mandates

dismissal. Second, the Complaint should be dismissed for failure to state a claim. Finally,

Plaintiffs' claims against Defendant JPMorgan Chase should be dismissed for lack of standing.

*Dismissal Under SLUSA*

This lawsuit is the second attempt by Plaintiffs' counsel to assert class action state law

claims arising out of Defendants' alleged activities associated with the sale of proprietary funds

and investments. Previously, Plaintiffs' counsel filed a putative class action in New York state

court in July 2012 (*Tralins v. JPMorgan Chase & Co*., No. 0652448/2012 (N.Y. Sup. Ct.

removed Aug. 3, 2012)) which asserted state law claims including breach of fiduciary duty,

statutory fraud, fraudulent inducement, and unjust enrichment. (*See Tralins* Complaint, attached

hereto as Exhibit A). JPMorgan Chase successfully removed *Tralins* pursuant to, *inter alia,*

SLUSA. (*See Tralins* Notice of Removal, attached hereto as Exhibit B.) SLUSA precludes class

action suits that are based upon state law and allege either an untrue statement or omission or the

use of any manipulative or deceptive device in connection with the purchase or sale of a covered

security. Congress enacted SLUSA to curb abuses by plaintiffs who bring certain state law class

action claims to avoid the pleading standards and restrictions under federal securities laws.

---

[1]    Effective October 1, 2012, CISC was merged into J.P. Morgan Securities LLC.

The *Tralins* complaint included claims for both statutory fraud and fraudulent inducement and alleged, for example, "deceptive acts," "knowingly false and misleading statements and omissions," and "intentional and deliberate" conduct "undertaken with a fraudulent, wanton or evil motive in conscious disregard of the rights of Plaintiff, the class members and the public at large." (*Tralins* Compl. ¶¶ 70,76, 94.) Plaintiffs' counsel voluntarily dismissed that action in August without seeking remand. (*See Tralins* Notice of Voluntary Dismissal, attached hereto as Exhibit C.)

In an effort to avoid the application of SLUSA to the instant Complaint, Plaintiffs' counsel have edited out words like "fraud," "misrepresentations" or "omissions," and omitted from the Complaint state law fraud claims. *Compare, e.g.*, Compl. ¶ 86 ("Defendants received fees from Plaintiffs and the other members of the Class, directly or indirectly, by breach of fiduciary duty, violation of trust and other wrongful acts."), *with Tralins* Compl. ¶ 85 ("JPMorgan received fees from Plaintiff and the Class members, directly or indirectly, by breach of fiduciary duty, violation of trust, and other wrongful, deceitful and fraudulent acts."). Nonetheless, the Complaint, as edited, alleges the identical supposed self-dealing scheme as in *Tralins* and still includes claims of fraudulent conduct, misrepresentations and omissions. Try as they might, Plaintiffs' wordsmithing cannot save the Complaint from dismissal under SLUSA.

In determining whether SLUSA applies, courts disregard state law labels affixed to claims and efforts by counsel to conceal a case based on misrepresentations or omissions. The substance of a complaint, not its form, controls for SLUSA preemption. *See Brown v. Calamos*, 664 F.3d 123, 126 (7th Cir. 2011). In *Jorling v. Anthem, Inc,* 836 F. Supp. 2d 821, 835 (S.D. Ind. 2011), the Southern District of Indiana addressed a situation very similar to that here—a prior complaint filed by the same counsel in a related lawsuit:

> Tellingly, in [the earlier complaint], the plaintiffs appear to be much more forthcoming with their allegations of failure to disclose or fraud or both. For instance, in [the earlier complaint] the plaintiffs expressly stated that [defendant] 'disingenuously assumed,' 'continued falsely to depict,' 'misrepresented the facts,' 'made no disclosure,' and 'did not disclose.' . . . In the Court's view, allowing Jorling's class action complaint to survive SLUSA because he carefully blotted out certain allegations would undermine federal securities law.

As in *Jorling*, Plaintiffs' "blott[ing] out [of] certain allegations" here does not save the Complaint from the impact of SLUSA.

### The Complaint Fails To Allege the Elements of Any State Law Claims

The Complaint also must be dismissed because Plaintiffs do not sufficiently plead a claim under state law for which relief can be granted. First, Plaintiffs fail to state a claim for breach of contract because the Complaint does not identify the contract(s) or any contractual provisions upon which Plaintiffs' claims are based. Instead, Plaintiffs rely only on conclusory allegations regarding the purported contractual obligations of Defendants without quoting or even referencing the source of such obligations. The Complaint also fails to allege a breach of a contract or damages as a result of any such breach. Plaintiffs say Defendants failed to act in their best interests by placing them in proprietary funds, but Plaintiffs do not plead that these funds performed poorly or that they suffered any harm as a result of their proprietary investments.

Second, the Complaint fails to state a claim for breach of fiduciary duty. Plaintiffs do not adequately plead the existence of a fiduciary relationship, a breach of a fiduciary duty (to the extent a fiduciary duty even exists) or damages as a result of any such breach. Further, Plaintiffs' claim for breach of fiduciary duty is duplicative of Plaintiffs' contract claim, and therefore, should be dismissed.

Finally, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment also should be dismissed. Like the fiduciary duty claim, each of

these claims is duplicative of Plaintiffs' contract claim and, accordingly dismissal is warranted. Indeed, courts dismiss claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing and unjust enrichment that are duplicative of contract claims, even where, as here, the contract claim is not sufficiently pled.

### Plaintiffs Have No Standing To Bring Claims Against JPMorgan Chase

Plaintiffs' claims against JPMorgan Chase should be dismissed pursuant to Rule 12(b)(1) for lack of standing. For a plaintiff to have standing, there must be a causal connection between their alleged injury and the actions of the defendant. Here, JPMorgan Chase primarily is a holding company—it is not registered as a broker-dealer. JPMorgan Chase neither entered into agreements with Plaintiffs nor charged management fees to Plaintiffs. As a result, Plaintiffs' injuries are not "traceable" to JPMorgan Chase and should be dismissed for lack of standing.

### BACKGROUND[2]

Plaintiffs allege state law claims for breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing and unjust enrichment. According to the Complaint, named Plaintiffs Patricia Holtz, Steven Greenspon and the Aunt Marlene Foundation each is a client of either JPMorgan Chase (which is incorrect) or CISC and each invested in Defendants' proprietary products. (Compl. ¶¶ 9, 10, 11.) Plaintiffs bring this lawsuit both

---

[2]  Pursuant to Rule 12(b)(6), this motion is based on the allegations in the Complaint, which are taken to be true solely for the purpose of the motion. This memorandum also references the complaint filed in *Tralins*, a prior lawsuit filed by two of the four law firms representing Plaintiffs here. The Court may properly consider the *Tralins* complaint in the context of this motion to dismiss. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (finding that the district court "was permitted to consider the public court documents filed in the earlier Indiana state court case in deciding the defendants' motion to dismiss"). In addition, pursuant to Rule 12(b)(1), a defendant may seek dismissal for lack of subject matter jurisdiction by raising a factual challenge to Plaintiffs' standing. *See United Phosphorus v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds* (finding that "the movant may use affidavits and other material to support the [12(b)(1)] motion").

individually and on behalf of a putative class of "all financial advisory clients of JPM and CISC from January 1, 2007 through the present (the 'Class Period') whose funds were placed in Defendants' proprietary funds and investments and who were charged investment management fees by Defendants . . . ." (Compl. at ¶ 1.) Plaintiffs do not allege that that the proprietary products at issue performed poorly or were otherwise not suitable given their respective investment objectives. Instead, the Complaint broadly alleges that Defendants engaged in a self-dealing scheme to "push and sell" proprietary products, regardless of whether those products were in Plaintiffs' best interests. (*See, e.g.,* Compl. ¶ 85.)

### The Purported Misrepresentations, Omissions and Fraud

According to the Complaint, Defendants publicly stated that they were acting in their clients' best interests. For example, on various websites, Defendants purportedly stated: "our clients come first," and "we work to understand our clients' needs, offer informed advice, execute strategies to provide excess alpha performance and world-class client solutions," (Compl. ¶¶ 18, 19), or that, "[w]e will work closely with you to understand your unique needs and create solutions designed to help you meeting your financial goals." (Compl. ¶ 21.) Plaintiffs allege that these statements were not true. Instead, through the use of a skewed bonus structure and quotas, Plaintiffs claim that Defendants allegedly "financially incentivized their financial advisors to cease performing honest and competent account management services." (Compl. ¶¶ 36, 47.) Plaintiffs allege that financial advisors were "instructed not to bother conducting the research and analysis necessary for client investments," (Compl. ¶ 41), and encouraged "to sell this or that JPM proprietary fund above all else." (Compl. ¶ 45.)

### The Alleged Contracts

Plaintiffs claim to have entered into standardized account agreements by which

5

Defendants were obligated to perform certain duties in exchange for fees. (Compl. ¶¶ 23, 26, 73.) Without reference to any contractual provision, Plaintiffs allege as a naked conclusion that these duties include the obligation to, "competently and honestly research, analyze, select investments and provide services," and that Defendants "contracted to comply with all laws, rules, regulations applicable to banks, brokerage firms, and investment advisors, as well as customs and standards in the financial services industry, representations made in marketing and advertising, and duties arising from common law." (Compl. ¶¶ 73, 23.) But beyond that, Plaintiffs do not identify the type of account agreements relevant to this lawsuit (other than general references to "financial advisory account agreements"). (Compl. ¶ 72.) Nor do Plaintiffs reference by name, or quote from any specific account agreements. There are no allegations at all regarding the particular terms of the account agreements that were purportedly breached, which laws, rules or regulations Defendants' contracted to honor, or what representations made in marketing and advertising materials might be at issue in this lawsuit.

### JPMorgan Chase Is Improperly Named as a Defendant

Defendant JPMorgan Chase is a leading global financial institution with operations worldwide. (Compl. at ¶ 12.) Defendant CISC is a registered broker-dealer that provides financial advisory services. (Compl. at ¶ 13.) According to Plaintiffs, Defendants, among other things, "offers private banking and wealth management services" (Compl. ¶ 16); employs financial advisors who "owe(d) fiduciary duties to their clients" (Compl. ¶ 17); "owed contractual obligations to Plaintiffs" (Compl. ¶ 23); "charged management fees" (Compl. ¶ 63); and "entered into" and "executed" account agreements with Plaintiffs. (Compl. ¶ 71.) But JPMorgan Chase is primarily a holding company that is not a registered broker-dealer. Specifically, JPMorgan Chase is not in the business of: (i) executing or entering into financial

advisory account agreements or similar contracts with individuals; (ii) hiring or employing

financial advisors, (iii) managing assets or operating either brokerage or managed accounts for

individuals; (iv) charging management fees to individuals; (v) offering either private banking or

wealth management services to individuals; or (vi) purchasing or selling mutual funds, equities

or any other investment vehicles on behalf of individuals.  (*See* Affidavit of Anthony J. Horan

("Horan Aff.") ¶¶ 2-9, attached hereto as Exhibit D.)

## ARGUMENT

The Complaint should be dismissed, with prejudice, under Rule 12(b)(6) because it is

preempted under SLUSA.  The Complaint should also be dismissed under Rule 12(b)(6) for the

independent reason that it fails to state a claim upon which relief can be granted.  Separately,

Plaintiffs' claims against Defendant JPMorgan Chase fail and should be dismissed under Rule

12(b)(1) because Plaintiffs lack standing to bring these claims.

## I.     THE COMPLAINT SHOULD BE DISMISSED UNDER SLUSA

SLUSA requires dismissal of a covered class action alleging state law statutory or

common law claims if the complaint alleges either (i) a misrepresentation or omission of a

material fact in connection with the purchase or sale of a covered security, or (ii) that defendant

used or employed any manipulative or deceptive device or contrivance in connection with the

purchase or sale of a covered security.  15 U.S.C. § 77p(b).  All of the elements of SLUSA are

satisfied here.

Moreover, Seventh Circuit authority mandates that dismissal of Plaintiffs' state law class

action claims under SLUSA should be with prejudice.[3]  In *Brown v. Calamos,* the Seventh

---

[3]    This is not to say that Plaintiffs cannot attempt to replead their claims under the federal
securities laws. In addition, named Plaintiffs can attempt to bring their claims on an
individual basis, rather than as a class action, under state law.

Circuit held that SLUSA operates as an affirmative defense on the merits, not a jurisdictional

defense that might be subject to dismissal without prejudice. 664 F.3d at 128. The court

explained that, allowing a plaintiff to amend a complaint (by deleting allegations that inject fraud

into case) would be contrary to the forum manipulation rule. *Id.* at 131. And it would not be

credible—even if a plaintiff were to delete allegations constituting fraud, the "likelihood that he

would do everything he could to sneak the allegation back into the case, if the complaint were

amended . . . would be so great as to make it imprudent to allow the complaint to be amended . . .

." *Id.*

  **A.**  **The Complaint Alleges a Covered Class Action Based upon State Common Law and Involves a "Covered Security" as Defined Under SLUSA**

  The Complaint alleges a covered class action as defined under SLUSA—it is a suit

brought on behalf of a putative class of more than 50 persons or by one or more named parties

acting as class representatives. (Compl. ¶¶ 65-68); 15 U.S.C. § 77p(f)(2). There also is no

question that this lawsuit is based upon state common law. (Compl. ¶ 1); 15 U.S.C. § 77p(b). In

addition, this lawsuit involves a "covered security." Under SLUSA, a "covered security" is one

that is traded nationally and listed on a national exchange or that is "issued by an investment

company that is registered, or that has filed a registration statement, under the Investment

Company Act of 1940." 15 U.S.C. § 77p(f)(3); 15 U.S.C. § 77r(b). As such, because the

proprietary funds and investments alleged in the Complaint include mutual funds, they constitute

covered securities. *Kircher v. Putnam Funds Trust*, 403 F.3d 478, 481 (7th Cir. 2005) (holding

that "investments in mutual funds are covered securities"), *rev'd on other grounds*, 547 U.S. 633

(2006); *Dudley v. Putnam Int'l Equity Fund*, Civ. No. 10-328-GPM, 2010 WL 1838255, at *1

(S.D. Ill. May 5, 2010) ("For SLUSA purposes, 'covered securities' include registered mutual

fund shares.").

### B. The Complaint Alleges Misrepresentations, Omissions or Manipulative or Deceptive Devices or Contrivances in Connection with the Purchase or Sale of a Covered Security

SLUSA applies to actions that (i) involve material misrepresentations, omissions or manipulative or deceptive devices or contrivances, which are (ii) "in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b). Here, Plaintiffs artfully attempt to avoid any explicit allegations of misrepresentations, omissions or fraud and even include an express disclaimer that they "do not allege fraud, deceptive practices, misrepresentation, or material omission in connection with the purchase or sale of securities." (Compl. ¶ 1.) But this Court must look to the substance of the Complaint rather than its form. *See Brown v. Calamos,* 664 F.3d at 126 (disregarding complaints' disclaimer, nearly identical to the disclaimer here, that there were no allegations of misstatements, omissions or fraud); *Richek v. Bank of America, N.A.*, No. 10-cv-6779, 2011 WL 3421512, at *3 (N.D. Ill. Aug. 4, 2011) ("when analyzing SLUSA preclusion, courts are guided by the substance rather than the form of a claim"); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 692 (S.D.N.Y. 2006) (well-pleaded complaint rule does not apply to SLUSA).

Plaintiffs' claims are couched as, *inter alia,* breach of contract and breach of fiduciary duty, but, in substance, they are the exact types of securities claims that SLUSA was intended to preclude. In fact, the Seventh Circuit has even recognized that SLUSA "especially" covers "bad" securities claims—*i.e.,* claims that, like here, could not be successfully pled under the federal securities laws. *See Kircher*, 403 F.3d at 484 (SLUSA's "preemptive effect . . . covers both good and bad securities claims-*especially* bad ones.").

### 1. The Complaint Alleges Material Misrepresentations, Omissions or Manipulative or Deceptive Devices Sufficient To Satisfy SLUSA

At its heart, this lawsuit alleges a fraudulent scheme to sell proprietary products to and at

the expense of unsuspecting financial advisory clients.  Although Plaintiffs avoid using words

like misrepresentation, omission, deceit or fraud, as they did explicitly in *Tralins,* the conduct

complained of is the same—*e.g.,* "encourag[ing] financial advisors to sell this or that JPM

proprietary fund above all else;"  "exploit[ing]" clients of Washington Mutual Bank by

"switching" their assets to JPM proprietary funds from other investments; and engaging in a

"self-dealing scheme aimed at enriching themselves at the expense of Plaintiffs." (Compl. ¶¶ 45,

58, 60, 85.)  These are allegations of fraud or the use of manipulative or deceptive devices.

Indeed, in *Tralins*, Plaintiffs' counsel alleged that the very same underlying conduct constituted

fraud.  *See, e.g., Tralins* Compl. ¶ 69 ("JPMorgan acting fraudulently, with bad faith, gross

negligence, for self-interested reasons, or without due care, breached its fiduciary duties by

selling Plaintiff and the class members JPMorgan's proprietary funds and investments when

other products were cheaper, better performing or otherwise more suitable for Plaintiff or the

Class members."); *Tralins* Compl. ¶ 61 ("JPMorgan deliberately deceived customers regarding

the true reason behind the sale of its proprietary funds and investments . . . .").

Indeed, entire sentences in the Complaint are lifted, nearly verbatim, from the *Tralins*

complaint.  For example, compare:

- Compl. ¶ 85 ("Defendants have been unjustly enriched through a self-dealing scheme aimed at enriching themselves at the expense of Plaintiffs and the other members of the Class.") with the *Tralins* Compl. ¶ 84 ("JPMorgan has been unjustly enriched through a self-dealing scheme aimed at enriching itself at the expense of Plaintiff and the other members of the Class.");

- Compl. ¶ 30 ("By 2011, in fact, JPM was the only bank among the 10 largest fund companies still engaging in this practice [selling proprietary funds and investments], according to the research firm Strategic Insights.") with the *Tralins* Compl. ¶ 27 ("By contrast, in 2011, JPMorgan was the only bank among the 10 largest fund companies still engaging in this practice [selling proprietary funds and investments], according to the research firm Strategic Insights.");

- Compl. ¶ 52 ("Ultimately, JPM's practice of foisting its proprietary funds and

investments on clients to generate substantial management fees was successful. JPM's mutual fund assets grew 29% to $114.7 billion from 2009 to 2010. In 2010, JPM's mutual funds drew in over $18.6 billion, solidifying JPM's place as the second most productive firm in the market at the time.") with the *Tralins* Compl. ¶ 35, 36 ("JPMorgan's efforts were successful. JP Morgan's mutual fund assets grew 29% to $114.7 billion from 2009 to 2010. In 2010, JPMorgan's mutual funds drew in over $18.6 billion, solidifying JPMorgan's place as the second most productive firm in the market at the time.").

The Complaint here also is replete with allegations that in substance allege misrepresentations and/or omissions. Plaintiffs claim Defendants represented that they would give objective investment advice based solely on their clients' best interests, but instead financial advisors "ceased – at Defendants' directive – performing time-consuming research and analysis and were instructed to place as many clients as possible into as many of Defendants' proprietary funds and investments as possible, without regard to their clients' interests." (Compl. ¶ 5.) The Complaint sets forth various statements alleged to have been made by Defendants—*e.g.*, "we . . . offer informed advice," or "we will look closely with you to understand your unique needs and create solutions designed to help you meeting your financial goals" (*see* Compl. ¶¶ 19, 21)— which, read in the context of the whole Complaint, assert misrepresentations and omissions. Plaintiffs' counsel themselves characterized these very same core allegations as false representations, claiming in *Tralins* that "JPMorgan ***falsely represented*** to consumers that JPMorgan's financial advisors were operating under fiduciary duties to the clients they served . . . . ." (*Tralins* Compl. ¶ 4, emphasis added.)

      a.    **The Fraudulent Scheme, Misrepresentations and Omissions Alleged Are Covered by SLUSA Under the Seventh Circuit's Decision in *Brown v. Calamos***

In *Brown v. Calamos*, the Seventh Circuit affirmed the dismissal under SLUSA of a lawsuit alleging, on its face, breach of fiduciary duty and unjust enrichment claims. 664 F.3d 123 (7th Cir. 2011). Plaintiffs in *Brown* were owners of common stock in a closed end

investment fund and claimed that they were harmed when the fund redeemed shares of its preferred stock holders. *Id.* at 125-26. Disregarding plaintiffs' express disclaimer of fraud (nearly identical to the disclaimer in the Complaint here), the *Brown* Court looked to the substance of the allegations (not the form) and found that a misrepresentation had, in fact, been alleged. *Id.* at 126. The complaint in *Brown* stated that the fund's public statements indicated holders of common stock could realize indefinite leverage (which apparently was not true)—and that an omission—that the fund might at any time redeem its preferred stock—had implicitly been made. *Id.* at 127. The *Brown* Court reviewed the approaches taken by the Third, Sixth and Ninth Circuits and found that, under both the Third and Sixth Circuits approaches, dismissal with prejudice was warranted: [4]

> The plaintiffs in the present case must lose even under a looser approach than the Sixth Circuit's (not the Ninth Circuit's approach, however, but one close to the Third Circuit's), whereby suit is barred by SLUSA only if the allegations of the complaint make it likely that an issue of fraud will arise in the course of the litigation—as in this case. The allegation of fraud would be difficult and maybe impossible to disentangle from the charge of breach of the duty of loyalty that the defendants owed their investors.

*Brown*, 664 F.3d at 128-29. In *Jorling v. Anthem, Inc.*, the federal district court in Indiana relied on both the Sixth Circuit's decision in *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir. 2009), and *Brown* to find that SLUSA required dismissal where plaintiff relied on an "alleged failure to disclose key information in connection with the IPO as proof of [defendant's] deceit and breach of tort or contract duties." *Jorling,* 836 F. Supp. 2d at 835 (holding that, "[a]s was

---

[4] According to the *Brown* Court, the Third Circuit applies SLUSA only when allegations of misrepresentations or omissions could be critical to a claim, whereas, the Sixth Circuit applies SLUSA when there are any allegations of misrepresentations or omissions. The Ninth Circuit apparently follows the Sixth Circuit, but allows for re-pleading, which is why dismissal with prejudice, at least initially, would not occur under the Ninth Circuit's approach. *Id.*

the case in *Brown*, it would be impossible to 'disentangle' the securities fraud issue from the state law claims involving fiduciary failure and breach of contract").

Like the complaints in *Brown* and *Jorling*, it is "likely that an issue of fraud will arise in the course of [this] litigation."[5] In fact, Plaintiffs' allegations of fraud are impossible to disentangle from their state law claims. *Brown*, 664 F.3d at 128-29; *Jorling*, 836 F. Supp. 2d at 835. Tellingly, Plaintiffs' counsel alleged fraud explicitly in their complaint in *Tralins*, which involved the very same underlying conduct. The misrepresentations and omissions alleged in the Complaint here, as in *Tralins,* are integral to the purported self-dealing scheme. And although couched in alleged breaches of contract and fiduciary duty, the heart of the Complaint is that Plaintiffs were misled. According to Plaintiffs, Defendants represented that they were providing objective research and advice in Plaintiffs' best interests, while, in reality, Defendants were acting in their own self-interest to increase profits. This is a quintessential allegation of fraudulent misrepresentation or omission.

### b. The Allegations in this Lawsuit Are Similar to Allegations in Cases that Routinely Have Been Dismissed Under SLUSA

Circuit and district courts throughout the country, including this District, consistently have applied SLUSA to complaints with allegations similar to those at issue here. For example, in *Segal v. Fifth Third Bank, N.A.,* the Sixth Circuit affirmed a dismissal under SLUSA where Plaintiffs alleged, *inter alia,* that defendant Fifth Third "failed to inform trust beneficiaries that their trust accounts would be invested in proprietary mutual funds . . . [and] the Bank purported to 'provide planning 'advice' under the guise that the advice was customized when, in fact, it

---

[5] Courts commonly refer to SLUSA's requirement of "material misstatements or omissions" or "manipulative or deceptive devices or contrivances" as fraud, however, scienter is not required for application of SLUSA. *See Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 698-99 (S.D. Ill. 2007).

[was] not . . . .'" *Segal,* 581 F.3d at 309-10. *See also, S.C. Rabin v. JPMorgan Chase Bank, N.A.,* No. 06 C 5452, 2007 WL 2295795, at *1, *6 (N.D. Ill. Aug. 3, 2007) (dismissing breach of fiduciary duty and unjust enrichment claims where plaintiff alleged misrepresentations and omissions in connection with defendants' purported scheme to invest "fiduciary account assets into its proprietary mutual fund . . . without regard to whether such investments were in the best interests of the beneficiaries"); *Kutten v. Bank of America, N.A.,* Civ. No. 06-0937 (PAM), 2007 WL 2485001 at *5 (E.D. Mo. 2007) (finding allegations that defendant transferred trust assets to proprietary funds under the guise of "providing individual and customized management of assets," to constitute misrepresentations and omissions). *See also, Siepel v. Bank of America, N.A.,*239 F.R.D. 558, 567-68 (E.D. Mo. 2006); *Spencer v. Wachovia Bank, N.A.,* No. 05-81016, 2006 WL 3408043, at *1, *4 (S.D. Fla. May 10, 2006); *Wells Fargo Bank v. Superior Court,* 71 Cal. Rptr. 3d 506, 513-514 (Cal. Ct. App. 2008).

Moreover, in *Felton v. Morgan Stanley*, plaintiffs alleged that retail customers of Morgan Stanley believed they were paying for and receiving informed investment advice. 429 F. Supp. 2d at 687-88. In that case, plaintiffs alleged that defendant failed to provide objective research reports upon which plaintiffs relied to make investment decisions. *Id.* Instead, plaintiffs alleged they received biased advice based upon Morgan Stanley's self-interest (favoring investment banking clients). *Id.* at 693. The *Felton* court explained that, although plaintiffs described the alleged misconduct as a breach of contract, it was also a "quintessential example of a fraudulent omission of a material fact under the federal securities laws." *Id.* The same is true here.

> **2. The Material Misstatements, Omissions or Manipulative or Deceptive Devices Were "In Connection With" the Purchase or Sale of a Covered Security**

Courts broadly construe the "in connection with" requirement of SLUSA. Notably, in *Merrill Lynch, Pierce, Fenner, and Smith Inc. v. Dabit*, 547 U.S. 71, 85-87 (2006), holding that

14

SLUSA applies to "holders" of securities, not just purchasers and sellers, the Supreme Court explained:

> "The presumption that Congress envisioned of a broad construction [of 'in connection with the purchase or sale of a covered security'] follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment. A narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act and thus run contrary to SLUSA's stated purpose . . . ."

*Dabit*, 547 U.S. at 86 (citing with approval *SEC v. Zanford*, 535 U.S. 813, 822, 824 (2002) which held that to satisfy the "in connection with" language under Rule 10(b) it is enough that the fraud alleged "coincide" with the securities transaction). Following *Dabit*, circuit and district courts have looked to whether the misconduct complained of "coincides" with the purchase and sale of securities. *See Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 302 (3d Cir. 2005) (looking at, *inter alia,* whether plaintiffs allege a "fraudulent scheme" that "coincides" with purchase and sale of securities); *Richek*, 2011 WL 3421512, at *4 ("Thus, under *Dabit*, 'it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." (quoting *Dabit*, 547 U.S. at 85)).

The misconduct alleged in the Complaint here "coincide[s]" with the purchase and sale of the proprietary funds and investments. The purported self-dealing scheme entailed selling proprietary funds to clients, either outright or by switching client assets from non-proprietary funds into JPMorgan Chase funds. *See e.g.,* Compl. ¶ 48 ("Defendants' strategy . . . worked, generating tremendous fees from investments in Defendants' proprietary funds and investments."). The class itself is defined as "all financial advisory clients of JPM and CISC . . . whose funds were placed in Defendants' proprietary funds and investments and who were charged investment management fees . . . ." (Compl. ¶ 1.) Logically, the putative class does not

15

include clients who did not purchase Defendants' proprietary products and this lawsuit does not involve allegations that are unrelated to the sales of such products.

## II. PLAINTIFFS' STATE LAW ALLEGATIONS SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Beyond SLUSA, the Complaint should be dismissed because each count fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain enough facts to state a claim that is not merely "conceivable" but "plausible on its face." *Id.* at 570. Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed. *Ashcroft v. Iqbal*, 556. U.S. 662, 679 (2009).

Here, each of Plaintiffs' claims should be subject to the even more rigorous federal pleading standards under Rule 9(b), which applies to all claims that include "averments of fraud," even if the statutes or common law doctrines allegedly violated do not require proof of fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations.").

### A. Plaintiffs Have Failed To Allege the Elements of Breach of Contract (Count I)

Plaintiffs' allegations of breach of contract are deficient under federal pleading standards and New York law.[6] To state a claim for breach of contract, Plaintiffs must adequately plead (1)

---

[6] For purposes of this motion to dismiss, the named Plaintiffs' claims are analyzed under New York law because Plaintiffs allege that the relevant contracts were governed by New York law. (Compl. ¶ 72.) *See e.g., Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, Nos. 02 C 0978, 02 C 3436, 2003 WL 151929, at *14-15 (N.D. Ill. Jan. 21, 2003) (applying contractual

the existence of a valid contract; (2) Plaintiffs' performance under the contract; (3) Defendants' breach of the contract; and (4) resulting damages. *See JP Morgan Chase v. J.H. Elec. of NY, Inc.*, 69 A.D.3d 802, 803 (N.Y. App. Div. 2010).

### 1.      Plaintiffs Have Failed To Identify a Contract

To state a claim for breach of contract, Plaintiffs must plead the existence of a valid contract with Defendants. *See J.H. Elec. of NY, Inc.*, 69 A.D.3d at 803. This element requires more than mere allegations of the existence of a contract; it requires that Plaintiffs "plead the provisions of the contract upon which the claim is based." *Howell v. Am. Airlines, Inc.*, No. 05-CV-3628 (SLT), 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006) ("In order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based."). Where the Complaint fails to offer specific allegations about the terms of the agreement, it must be dismissed. *Ostrolenk Faber LLP v. Unigene Labs., Inc.*, No. 12 Civ. 3991(HB), 2012 WL 3114742, at *2 (S.D.N.Y. Aug. 1, 2012).

Plaintiffs here include nothing more than general allegations that Defendants contracted to comply with, *inter alia,* all "laws, rules, and regulations applicable to banks, brokerage firms, and investment advisors," and broadly claim that Defendants were obligated to "conduct thorough and accurate research of investments and market conditions" and "manage investments in the best interests of the client." (Compl. ¶¶ 23, 26.) Plaintiffs fail, however, to identify any specific contractual provisions from which these broad-based responsibilities purportedly derive. Rather than quote from, reference or even identify a particular contract, Plaintiffs resort instead to alleging agreements in vague and conclusory terms. *See* Compl. ¶ 26 (referring to "these

---

choice of law clause to breach of fiduciary duty and other related tort claims where the contractual agreement formed the basis of the fiduciary relationship). Defendants do not concede the application of New York law for any other purpose.

financial advisory agreements"). These allegations are insufficient to plead the contracts or the specific terms purportedly breached. *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (dismissing contract claim where "plaintiff has not specifically identified the contract (or contracts) at issue and has not specified the terms of the agreement that defendant purportedly breached").

### 2.     Plaintiffs Have Failed To Plead a Breach of a Contract

"Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract [under New York law]." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008). Plaintiffs broadly allege that by engaging in a self-dealing scheme, Defendants breached their contractual obligations to act in the best interests of their clients. (Compl. ¶¶ 2, 3.) But Plaintiffs fail to plead how and why the alleged actions frustrated the object of any contract. Plaintiffs do not allege that the proprietary funds were unsuitable for Plaintiffs, that the funds did not perform well when compared to similar investments, or that, overall, the purchase of the funds were not in Plaintiffs' best interests. For example, Plaintiffs allege that the funds had been "vetted and approved by the portfolio management team in New York." (Compl. ¶ 45.) Yet Plaintiffs never explain why the process of vetting and approval would be insufficient under their alleged contracts. Likewise, Plaintiffs rely on a conclusory statement that the Chase Strategic Portfolio ("CSP") carried a fee higher than what might be charged by unspecified independent financial planners. (Compl. ¶ 35.) But Plaintiffs do not explain why fees on CSP are comparable to fees charged by other financial advisors, nor do they allege that the fees were excessive compared to similar products.

### 3.     Plaintiffs Have Failed To Adequately Plead Damages

To state a claim for breach of contract, Plaintiffs must allege that they were harmed as a direct result of the alleged breach. *City of Peekskill v. Continental Ins. Co.*, 166 F.3d 1199, at *1,

*2 (2d Cir. 1998) (affirming dismissal of breach of contract claim where plaintiff "suffered no damages"). A party to a contract is not entitled to a judgment merely by alleging that the counterparty has inadequately performed; rather, the plaintiff must show that it was damaged as a result of the breach. *Cramer v. Spada*, 610 N.Y.S.2d 662, 664 (N.Y. App. Div. 1994) (affirming dismissal of complaint because "the failure to prove damages is . . . fatal to [a] plaintiff's breach of contract cause of action"). Moreover, "[A]n allegation that defendant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*." *Int'l Bus. Machs. Corp. v. Dale*, No. 7:11-cv-951 (VB), 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011) (dismissing tort and breach of contract counterclaims where counter-claimant failed to plead facts showing how she was damaged by plaintiff's alleged conduct).

Plaintiffs have not pled that they suffered any harm or injury as a result of Defendants' alleged conduct. In the section of the Complaint entitled "Defendants' Misconduct Caused the Class Substantial Harm," Plaintiffs allege merely that they were "forced to pay substantial fees for investment advisory services" along with other "upfront fees." (Compl. ¶ 61.) These are just demands for a refund. The Complaint does not allege the harm Plaintiffs suffered to warrant that refund, or that Defendants failed to perform their contractual duties. Plaintiffs allege the purpose of the contract was to "serve the best interests of [] clients" and to "maximize client returns." (Compl. ¶ 2.) Yet nowhere in the Complaint do Plaintiffs allege that they were harmed because this purpose was frustrated by the actions of Defendants. Indeed, an equally plausible result is that Plaintiffs *benefitted* from the actions alleged – investments in proprietary funds may have performed well and, in fact, "maximiz[ed] clients returns."

### B. Plaintiffs Have Failed To State a Claim for Breach of Fiduciary Duty (Count II)

Plaintiffs' claim for breach of fiduciary duty should be dismissed because it is duplicative

19

of their claim for breach of contract and because Plaintiffs fail to adequately plead any of the elements of a breach of fiduciary duty claim.

### 1. Plaintiffs' Claim for Breach of Fiduciary Duty Is Duplicative

Plaintiffs cannot bring a "duplicative" breach of fiduciary duty claim against financial advisors where the claim is "based upon the same facts and theories as [plaintiff's] breach of contract claim." *Brooks v. Key Trust Co. Nat'l Ass'n*, 26 A.D.3d 628, 630 (N.Y. App. Div. 2006). This is true even where the breach of contract claim fails as a matter of law. *Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305 A.D.2d 268, 268-69 (N.Y. App. Div. 2003) (claim for breach of fiduciary duty dismissed as "duplicative of the breach of contract claim" where court also affirmed dismissal of breach of contract claim). In *Brooks*, the court found that, although "plaintiff demonstrated that defendants' role as his financial advisor with discretionary authority to manage his investment accounts created a fiduciary duty," this was insufficient to sustain a claim for breach of fiduciary duty, which relied on the same facts and theories as the breach of contract claim. 26 A.D.3d at 630.

Like plaintiff in *Brooks,* Plaintiffs here have failed to allege any independent claims based on fiduciary duties allegedly owed by Defendants. Indeed, the Complaint itself acknowledges the total overlap between the breach of contract and breach of fiduciary duty claims. *See, e.g.,* Compl. ¶ 6 (by allegedly pressuring financial advisors to sell JPM proprietary funds, "Defendants breached their contractual and fiduciary duties"). Even the counts that state the two claims contain nearly identical allegations. *Compare* Compl. ¶ 73, "Defendants had duties to exercise their contractual obligations . . . including the obligation to competently and honestly research, analyze, select investments and provide services, in exchange for account-related fees that Plaintiffs and the other members of the class paid to defendants," *with*, Compl. ¶ 79, "Defendants owed fiduciary duties to Plaintiffs . . . to competently and honestly research,

analyze, and select investments and provide services, in exchange for account-related fees that Plaintiffs and the other members paid to the defendants."

### 2. Plaintiffs Have Failed To Plead the Elements of a Breach of Fiduciary Duty

Under New York law, Plaintiffs must plead three elements to state a claim for breach of fiduciary duty: (1) a fiduciary duty existed between plaintiff and defendant; (2) defendant breached that duty; and (3) damages resulted from the breach. *Sheehy v. New Century Mtg. Corp.*, 690 F. Supp. 2d 51, 62 (E.D.N.Y. 2010). Plaintiffs fail to sufficiently plead these elements and their breach of fiduciary duty claim should be dismissed.

*No Duty.* Although Plaintiffs repeatedly make conclusory references to the fiduciary duties allegedly owed and publicly acknowledged by the Defendants (*see* Compl. ¶¶ 17-22, 25), they fail to specify how and why these duties operate in the context of Plaintiffs' alleged investment accounts. Plaintiffs fail to reference any agreements in which the Plaintiffs contractually agreed to a fiduciary relationship, and they fail to plead whether they opened discretionary or non-discretionary accounts with the Defendants. To the extent the accounts at issue may be non-discretionary, Defendants "do not owe clients a fiduciary duty." *Celle v. Barclays Bank P.L.C.*, 48 A.D.3d 301, 302 (N.Y. App. Div. 2008); *see Fesseha*, 205 A.D.2d at 268-69 ("The claim for breach of fiduciary duty was properly dismissed since plaintiff opened a non-discretionary trading account, and the relationship between plaintiff and defendant was merely that of broker and customer.").

*No Breach.* Plaintiffs have also failed to adequately plead a breach of fiduciary duty. Using terms similar to those used in connection with their breach of contract allegations, Plaintiffs allege that Defendants violated their fiduciary duties by failing to act in their clients' best interests and by pushing clients to purchase proprietary funds. (Compl. ¶ 80.) The

Complaint does not allege that these funds were not prudent or suitable investments for Plaintiffs.  Nor are there any allegations that these investments in proprietary funds did not perform well, either independently or relative to comparable investments.  As with their contract claim, Plaintiffs allege no specific basis on which to state a claim that the Plaintiffs breached their fiduciary duties.  *See supra* at Sec. II.A.2.

　　　　**No Damage.**  Damages are a required element of a claim for breach of fiduciary duty. *See Moscato v. Tie Techs., Inc.,* Civ. No. 04-2487 (GBD), 2005 WL 146806, at *6 (S.D.N.Y. Jan. 21, 2005) (holding that, in order to state a claim for breach of fiduciary duty, plaintiff must allege that the breach resulted in and was the proximate cause of damages).  Just as Plaintiffs failed to plead how they were damaged by the alleged breach of contract, they also have failed to allege how they were damaged as a result of Defendants' purported breach of fiduciary duty. *See supra* at Sec. II.A.3.

　　**C.**　　**Plaintiffs Have Failed To State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count I) and for Unjust Enrichment (Count III)**

　　　　Under New York law, both claims for the implied covenant of good faith and fair dealing and claims for unjust enrichment fail where "a breach of contract claim, based upon the same facts, is also pled."  *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Courts will dismiss such claims even where the breach of contract claim is also dismissed.  *See e.g.*, *Ahead Realty LLC v. India House, Inc.,* 92 A.D.3d 424, 425 (N.Y. App. Div. 2012) (dismissing claim for breach of covenant of good faith and fair dealing as duplicative even though breach of contract claim was also dismissed); *Unclaimed Prop. Recovery Serv., Inc. v. UBS PaineWebber Inc.,* 870 N.Y.S.2d 361, 362 (N.Y. App. Div. 2009) (dismissing unjust enrichment claim as duplicative even though contract claim was also dismissed).

　　　　Here, Plaintiffs make no attempt to differentiate their good faith and fair dealing claim

from the underlying breach of contract claim.  The two claims are even contained within the same count and rely on the same supporting paragraphs.  (*See* Compl. ¶¶ 70-77.)

Similarly, Plaintiffs allege that they have sued to reclaim "investment management fees" paid "in exchange for investment advice and related services" that "Defendants contracted to provide." (Compl. ¶ 2; *see also*, Compl. ¶¶ 23, 24, 26, 27, 71.)  Because the relationship between the parties was purportedly governed by account agreements, Plaintiffs' claim for unjust enrichment is  precluded as a matter of law.  *Zutty v. Rye Select Broad. Mkt. Prime Fund, L.P.*, 939 N.Y.S.2d 745, 2011 WL 5962804, at *8 (N.Y. App. Div. 2012) (dismissing unjust enrichment claim by fund investors related to fees collected by fund managers where contract governed fees at issue).

## III.  PLAINTIFFS' CLAIMS AGAINST DEFENDANT JPMORGAN CHASE SHOULD BE DISMISSED FOR LACK OF STANDING

"A motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  Standing is "an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). For a plaintiff to have standing to sue a defendant, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation and punctuation omitted).

The defendant may bring a facial or factual challenge to standing.  *Apex,* 572 F.3d at 443-44.  A factual challenge "lies where the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *Id.* at 444 (internal quotation marks and citation omitted).  The defendant raises a factual challenge by submitting to the court "external facts" that

"call[] the court's jurisdiction into question." *Id*. In considering a factual challenge to jurisdiction, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id*. (internal quotation marks omitted).

Plaintiffs lack standing to bring the claims alleged against Defendant JPMorgan Chase because JPMorgan Chase is primarily a holding company that is not a registered broker-dealer. (*See* Horan Aff. ¶¶ 2-3.) Among other things, JPMorgan Chase is not in the business of: (i) entering into or executing contracts with Plaintiffs (including financial advisory or similar agreements), (ii) managing Plaintiffs' assets or operating either managed or brokerage accounts for Plaintiffs (iii) charging management fees to Plaintiffs, (iv) offering either private banking or wealth management services to Plaintiffs, (v) purchasing or selling funds or investments on behalf of Plaintiffs; or (vi) hiring or employing financial advisors. (*See* Horan Aff. ¶¶ 4-9.)

This lack of a connection between JPMorgan Chase and Plaintiffs renders the suit against JPMorgan Chase without a legitimate case or controversy. For example, in *Johnson v. Geico Cas. Co.,* 673 F. Supp. 2d 244 (D. Del. 2009), the District of Delaware granted a 12(b)(1) factual challenge to standing by defendants GEICO Casualty and GEICO General because two co-defendants (and related companies) had actually been the parties responsible for issuing and administering the policies at issue. 673 F. Supp. 2d at 253-54. Plaintiffs' alleged injuries were thus "not traceable." *Id.* at 254. *See also, Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 944-46 (S.D. Cal. 2007) (injury alleged was "not traceable to the actions" of parent company Wal-Mart Stores because the "allegations and proffered evidence" were "insufficient to show that Wal-Mart Stores was involved in the alleged wrongdoing against Plaintiff or even directs the kind of activity Plaintiff complains of"); *In re Toyota Motor Corp. Unintended Acceleration*

*Mktg., Sales Practices, and Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1191-92 (C.D. Cal. 2011) (granting 12(b)(1) motion as to plaintiffs' claims against Toyota Motor North America, Inc., Toyota Motor Sales U.S.A., and Toyota Motor Engineering because plaintiffs could trace their injuries only to alleged actions of related company Toyota Motor Corporation).  Here, there is no injury traceable to JPMorgan Chase, and, as a result, it should be dismissed pursuant to Rule 12(b)(1) as a defendant to this action.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss the Complaint in its entirety, with prejudice.


Dated: November 5, 2012                         Respectfully submitted,

                                    By:     /s/ Stephen V. D'Amore
                                            Stephen V. D'Amore (#6224741)
                                            Michael S. Pullos (#6293587)
                                            WINSTON & STRAWN LLP
                                            35 West Wacker Drive
                                            Chicago, IL 60601
                                            (312) 558-5600

                                            Jonathan K. Youngwood (pro hac vice)
                                            Janet A. Gochman (pro hac vice)
                                            SIMPSON THACHER & BARTLETT LLP
                                            425 Lexington Avenue
                                            New York, NY 10017
                                            (212) 455-2000

                                            *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a copy of the foregoing

**Memorandum of Law in Support of Defendants' Motion to Dismiss** was served on counsel

for all parties electronically via the CM/ECF system on November 5, 2012.


Dated: November 5, 2012                                    /s/ Stephen V. D'Amore