**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

------------------------------------------------------------------- x
                                      :

PATRICIA HOLTZ, AUNT MARLENE        :
FOUNDATION, STEVEN GREENSPON, and   :
TERENCE HEUEL, individually and on behalf  :
of all others similarly situated,            :
                                      :

                    Plaintiffs,     :  Case No. 1:12-CV-07080
                                      :

           vs.                      :  Hon. John W. Darrah
                                      :

J.P. MORGAN SECURITIES LLC,          :
JPMORGAN CHASE BANK, N.A.,          :
JPMORGAN CHASE & CO., and J.P.        :
MORGAN INVESTMENT MANAGEMENT    :
INC.,                                   :

                    Defendants.

------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**Table of Contents**

Page

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 5

ARGUMENT ....................................................................................................... 8

I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER
SLUSA .......................................................................................................... 8

    A.    The Amended Complaint Alleges a Covered Class Action Based
upon State Common Law and Involves a "Covered Security" as
Defined Under SLUSA .............................................................................. 9

    B.    The Amended Complaint Alleges a "Misrepresentation or
Omission" or "Manipulative or Deceptive Device or Contrivance" .......... 9

        1.    *Brown v. Calamos* Requires Dismissal of This Case Under
SLUSA ............................................................................................10

        2.    Plaintiffs Cannot Avoid SLUSA Preemption by Artfully
Editing the Earlier *Tralins* Complaint ..........................................12

    C.    The Material Misstatements, Omissions or Manipulative or
Deceptive Devices or Contrivances Were "In Connection With"
the Purchase or Sale of a Covered Security ............................................. 14

II.    PLAINTIFFS' STATE LAW COUNTS SHOULD BE DISMISSED
BECAUSE THEY FAIL TO STATE A CLAIM UPON WHICH RELIEF
CAN BE GRANTED ....................................................................................... 16

    A.    Plaintiffs Have Failed to Allege the Elements of Breach of
Contract (Count I) .................................................................................... 16

        1.    Plaintiffs Have Failed to Identify a Contract ................................16

        2.    Plaintiffs Have Failed to Plead a Breach of a Contract ................17

        3.    Plaintiffs Have Failed to Adequately Plead Damages ..................18

    B.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty
(Count II) ................................................................................................ 19

        1.    Plaintiffs' Claim for Breach of Fiduciary Duty is
Duplicative ....................................................................................19

2.  Plaintiffs Fail to Plead the Elements of a Breach of Fiduciary Duty ...............................................................................20

C.  Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count I) and for Unjust Enrichment (Count III) ............................................................................ 22

D.  Plaintiffs Fail to State a Claim Against JPMorgan Chase and JPMIM ................................................................................................ 23

III.  PLAINTIFFS' CLAIMS AGAINST JPMORGAN CHASE SHOULD BE DISMISSED FOR LACK OF STANDING ........................................................ 24

CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328 (7th Cir. 2012) ...................................... 16

*Ahead Realty LLC v. India House, Inc.,* 92 A.D.3d 424 (N.Y. App. Div. 2012) ........................ 22

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009)............................. 5, 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 16

*Berman v. Sugo LLC*, 580 F. Supp. 2d 191 (S.D.N.Y. 2008) ........................................... 18

*Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, No. 02 C 0978, 02 C 3436, 2003 WL 151929 (N.D. Ill. Jan. 21, 2003) ........................................ 16

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007) ............................... 16

*Bourrienne v. Calamos*, No. 10-CV-7295, 2011 WL 3421559 (N.D. Ill. Aug. 4, 2011) ......................................................... 12

*Brooks v. Key Trust Co. Nat'l Ass'n*, 26 A.D.3d 628 (N.Y. App. Div. 2006)....................... 19, 20

*Brown v. Calamos,* 664 F.3d 123 (7th Cir. 2011), *cert. denied*, 132 S.Ct. 2774 (2012)......................................................... 8, 9, 10, 11

*Celle v. Barclays Bank P.L.C.*, 48 A.D.3d 301 (N.Y. App. Div. 2008) ............................... 21

*City of Peekskill v. Continental Ins. Co.*, 166 F.3d 1199 (2d Cir. 1998) ........................... 18

*Crabtree v. Tristart Auto. Grp., Inc.*, 776 F. Supp. 155 (S.D.N.Y. 1991) .......................... 23

*Cramer v. Spada*, 610 N.Y.S.2d 662 (N.Y. App. Div. 1994) .......................................... 18

*Dabit v. Merrill, Lynch, Pierce, Fenner & Smith Inc.*, 395 F.3d 25 (2d Cir. 2005), *rev'd on other grounds*, 547 U.S. 71 (2006).......................................... 12

*Dudley v. Putnam Int'l Equity Fund*, Civ. No. 10-328-GPM, 2010 WL 1838255 (S.D. Ill. May 5, 2010).......................................................... 9

*Felton v. Morgan Stanley,* 429 F. Supp. 2d 684 (S.D.N.Y. 2006)................................... 11, 12

*Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305 A.D.2d 268 (N.Y. App. Div. 2003) ............................................................ 19, 21

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73 (2d Cir. 2002) ...................... 22

*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) ........................................... 1

*Howell v. Am. Airlines, Inc.*, No. 05-CV-3628 (SLT), 2006 WL 3681144
(E.D.N.Y. Dec. 11, 2006) ................................................................. 17

*In re Trinsum Grp., Inc.*, 460 B.R. 379 (S.D.N.Y. 2011) ............................................. 23

*Int'l Bus. Machs. Corp. v. Dale*, No. 7:11-cv-951 (VB), 2011 WL 4012399
(S.D.N.Y. Sept. 9, 2011) ................................................................. 18

*James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296 (E.D.N.Y. 2012) ................................... 17

*Johnson v. Geico Cas. Co.,* 673 F. Supp. 2d 244 (D. Del. 2009) ................................................. 25

*Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821 (S.D. Ind. 2011) ......................................... 3, 14

*JP Morgan Chase v. J.H. Elec. of NY, Inc.*, 69 A.D.3d 802 (N.Y. App. Div. 2010).................... 16

*Kennedy v. Nicastro*, 503 F. Supp. 1116 (N.D. Ill. 1980).......................................................... 23

*Kircher v. Putnam Funds Trust*, 403 F.3d 478 (7th Cir. 2005), *rev'd on other
grounds*, 547 U.S. 633 (2006)............................................................. 9, 10

*Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-cv-709-JPG, 2008 WL 2397582
(S.D. Ill. June 10, 2008), *aff'd*, 556 F.3d 639 (7th Cir. 2009) ................................... 14

*Kutten v. Bank of America,* No. 06-0937 (PAM), 2007 WL 2485001 (E.D. Mo.
Aug. 29, 2007) ................................................................. 12

*Liafail, Inc. v. Learning 2000, Inc.*, Nos. Civ.A. 01-599, 01-678, 2002 WL
31414141 (D. Del. Oct. 23, 2002) ......................................................... 24

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................... 24

*Meisel v. Grunberg,* 651 F. Supp. 2d 98 (S.D.N.Y. 2009) ............................................. 23

*Merrill Lynch, Pierce, Fenner, & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) ....................... 14, 15

*Moscato v. Tie Techs., Inc.,* Civ. No. 04-2487 (GBD), 2005 WL 146806
(S.D.N.Y. Jan. 21, 2005)................................................................. 21

*Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692 (S.D. Ill. 2007) ................................. 11

*Richek v. Bank of America, N.A.*, No. 10-cv-6779, 2011 WL 3421512 (N.D. Ill.
Aug. 4, 2011) ................................................................. 8, 15

*Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005) ................................. 12, 15

*S.C. Rabin v. JPMorgan Chase Bank, N.A.,* No. 06 C 5452, 2007 WL 2295795
(N.D. Ill. Aug. 3, 2007)................................................................. 12

*SEC v. Zanford*, 535 U.S. 813 (2002) .......................................................................... 15

*Segal v. Fifth Third Bank, N.A.,*581 F.3d 305 (6th Cir. 2009)................................. 12, 14

*Sheehy v. New Century Mtg. Corp.*, 690 F. Supp. 2d 51 (E.D.N.Y. 2010).................................. 20

*Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928 (7th Cir. 1996) ........................ 24

*Tralins v. JPMorgan Chase & Co.*, No. 0652448/2012 (N.Y. Sup. Ct. July 13, 2012) .......................................................................................................... 1

*Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521 (D. Del. 2008).................................................... 24

*Unclaimed Prop. Recovery Serv., Inc. v. UBS PaineWebber Inc.*, 870 N.Y.S.2d 361 (N.Y. App. Div. 2009) ............................................................................... 22

*Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*, 939 N.Y.S.2d 745, 2011 WL 5962804 (N.Y. Sup. Ct. 2011) ............................................................................... 22

## STATUTES

15 U.S.C. § 77p(b) ............................................................................................................ 8, 9

15 U.S.C. § 77p(f)(2) ........................................................................................................... 9

15 U.S.C. § 77p(f)(3) ........................................................................................................... 9

15 U.S.C. § 77r(b) ............................................................................................................... 9

Rules 12(b)(1) ........................................................................................................... 1, 4, 25

Rules 12(b)(6) ....................................................................................................................... 1

Defendants J.P. Morgan Securities LLC ("JPMS"), JPMorgan Chase Bank, N.A. ("JPMC Bank"), JPMorgan Chase & Co. ("JPMorgan Chase") and J.P. Morgan Investment Management Inc. ("JPMIM" and, collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Amended Class Action Complaint ("the Amended Complaint") pursuant to Rules 12(b)(6) and 12(b)(1).

## PRELIMINARY STATEMENT

The Amended Complaint is Plaintiffs' counsel's third attempt to assert state law claims that are barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). On July 26, 2012, two of Plaintiffs' counsel filed a putative class action in New York state court entitled *Tralins v. JPMorgan Chase & Co*., No. 0652448/2012 (N.Y. Sup. Ct. July 13, 2012). After JPMorgan Chase successfully removed the case to federal court, Plaintiffs' counsel voluntarily dismissed it, rather than seek remand or face mandatory dismissal of the class action under SLUSA.[1] Less than six weeks later, Plaintiffs filed the instant action alleging the same core facts and claims, which JPMorgan Chase and Chase Investment Services Corporation ("CISC"), the initial Defendants named, moved to dismiss. Instead of opposing the motion, Plaintiffs' counsel filed yet another complaint (the Amended Complaint). The Amended Complaint repeats the same pleading deficiencies and should now, finally, be dismissed with prejudice.

### *SLUSA Mandates Dismissal of the Amended Complaint*

Congress enacted SLUSA for the purpose of curbing abuses by plaintiffs who bring certain state law class action claims to avoid the pleading standards and restrictions of the federal securities laws. Once a case is in federal court, SLUSA requires the dismissal of class action

---

[1] The *Tralins* Complaint, Notice of Removal and Voluntarily Dismissal are attached hereto as Exhibits A, B and C, respectively. The Court may properly consider these court papers in the context of this motion. *See Henson v. CSC Credit Servs*., 29 F.3d 280, 284 (7th Cir. 1994).

suits that are based on state law and allege either an untrue statement or omission or the use of any manipulative or deceptive device in connection with the purchase or sale of a covered security. In their third attempt to avoid SLUSA, Plaintiffs' counsel camouflage this lawsuit as an action for breach of contract and breach of fiduciary duty. Nonetheless, under well-established Seventh Circuit authority, courts must look to the substance of a complaint to determine whether SLUSA applies. Because the substance of the Amended Complaint is fundamentally rooted in claims of misrepresentation and omission, dismissal under SLUSA is mandatory.

The cornerstone of the Amended Complaint is Plaintiffs claim that Defendants engaged in a purported self-dealing scheme to "push and sell" proprietary products to clients, regardless of their clients' best interests. Am. Compl. ¶ 3. The Amended Complaint is replete with allegations of both misrepresentations and omissions. Plaintiffs claim that Defendants repeatedly represented to clients (on websites and in press releases) that they provided objective, well-informed investment advice, when, in fact, Plaintiffs allege, the opposite was true. Moreover, Plaintiffs also allege that certain similar untrue statements were made in SEC filings. This is precisely the type of pleading that SLUSA was intended to preclude.

A closer examination of the *Tralins* action proves that the substance of the Amended Complaint is really founded on allegations of fraud and deception in connection with the sale of a security. In *Tralins*, Plaintiffs' counsel sought recovery for the same alleged underlying misconduct at issue here, but did so by expressly asserting claims for fraud. For example, Plaintiffs' counsel alleged "deceptive acts," "knowingly false and misleading statements and omissions," and "intentional and deliberate" conduct "undertaken with a fraudulent, wanton or evil motive in conscious disregard of the rights of Plaintiff, the class members and the public at large." *Tralins* Compl. ¶¶ 70, 76, 94. To avoid application of SLUSA, Plaintiffs' counsel

voluntarily dismissed *Tralins* and shortly thereafter commenced this action. Yet the deletion of words like "misrepresentation," "fraud," or "omission" as well as state law fraud claims cannot save the Amended Complaint from dismissal under SLUSA. *Compare, e.g.*, Am. Compl. ¶ 100 ("Defendants received fees from Plaintiffs and the other members of the Class, directly or indirectly, by breach of fiduciary duty, violation of trust and other wrongful acts."), *with Tralins* Compl. ¶ 85 ("JPMorgan received fees from Plaintiff and the Class members, directly or indirectly, by breach of fiduciary duty, violation of trust, and other wrongful, deceitful and fraudulent acts."). Despite Plaintiffs' wordsmithing, the Amended Complaint still alleges the same self-dealing scheme as in *Tralins* and still includes claims of fraud, misrepresentations and omissions in connection with the sale of proprietary investments. *See Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 835 (S.D. Ind. 2011) (applying SLUSA where, in an earlier filed complaint, plaintiffs' counsel was "much more forthcoming with their allegations of failure to disclose or fraud or both").

### The Amended Complaint Fails to Allege the Elements of Any State Law Claims

In addition to SLUSA requiring dismissal of the entire Amended Complaint, the Amended Complaint fails to allege the elements necessary for each of its three claims.

Plaintiffs fail to state a claim for breach of contract because the Amended Complaint does not identify either the contract(s) or any contractual provisions upon which Plaintiffs' claims are based. In amending the Complaint, Plaintiffs added language from brochures filed with the SEC and a contract for a mutual funds program, but these documents are not alleged to have anything to do with Plaintiffs. Am. Compl. ¶ 34-40. The Amended Complaint also fails to allege a breach of contract or damages as a result of a breach. Plaintiffs say Defendants failed to act in their best interests by placing them in proprietary funds, but Plaintiffs do not plead that the funds

performed poorly or that they suffered any harm as a result.

In addition, the Amended Complaint fails to state a claim for breach of fiduciary duty. Plaintiffs do not adequately plead the existence of a fiduciary relationship, a breach of a fiduciary duty or damages as a result of a breach. Plaintiffs' claim for breach of fiduciary duty also is duplicative of Plaintiffs' contract claim, and, therefore, should be dismissed. Further, like the fiduciary duty claim, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment are duplicative of Plaintiffs' contract claim and, accordingly, must be dismissed. This is true even where, as here, the contract claim is not sufficiently pled.

Finally, Plaintiffs' claims against JPMorgan Chase and JPMIM fail for the independent reason that neither is alleged to have entered into a contract with Plaintiffs or employed financial advisors who owed fiduciary duties to Plaintiffs. *Id.* ¶¶ 9-12, 22. Plaintiffs repeatedly group Defendants together—for example, alleging that all Defendants owed contractual duties to Plaintiffs—but do not plead a basis for asserting liability against either JPMorgan Chase or JPMIM. Further, although Plaintiffs now plead that JPMorgan Chase is the parent that controls JPMC Bank and JPMS (the entities with which Plaintiffs purportedly contracted) there are no allegations, much less plausible ones under *Twombly*, that support finding derivative liability.

### *Plaintiffs Lack Standing to Bring Claims Against JPMorgan Chase*

Plaintiffs' claims against JPMorgan Chase also should be dismissed pursuant to Rule 12(b)(1) for lack of standing. For a plaintiff to have standing, there must be a causal connection between their alleged injury and the actions of the defendant. JPMorgan Chase is primarily a holding company—it is not registered as a broker-dealer. JPMorgan Chase neither entered into agreements with Plaintiffs nor charged management fees to Plaintiffs. As a result, Plaintiffs' injuries are not "traceable" to JPMorgan Chase and should be dismissed for lack of standing.

# BACKGROUND[2]

Plaintiffs Patricia Holtz, Steven Greenspon, the Aunt Marlene Foundation and Terrence Heuel bring this lawsuit both individually and on behalf of a putative class of "all financial advisory clients of Defendants from January 1, 2008 through the present (the 'Class Period') whose funds were placed in Defendants' and/or their affiliates proprietary mutual funds and investments and who were charged investment management fees by Defendants . . . ." *Id.* ¶ 1. The Amended Complaint names as Defendants JPMorgan Chase, JPMC Bank, JPMIM and JPMS (as the successor to CISC). Plaintiffs do not allege that they entered into financial advisory (or any) agreements with either JPMorgan Chase or JPMIM or that either entity employed the financial advisors who purportedly owe Plaintiffs a fiduciary duty. *Id.* ¶ 9-12, 22. Nonetheless, Plaintiffs repeatedly make reference to "Defendants," without distinguishing between the separate corporate entities named. For example, on the one hand, Plaintiffs state they contracted only with JPMC Bank or JPMS, *id.* ¶¶ 9-12, on the other hand, Plaintiffs conclude that "Defendants also owed contractual obligations to Plaintiffs and the other members of the Class pursuant to the standardized account agreements executed by and between Defendants and Plaintiffs and members of the Class." *Id.* ¶ 28.

### *The Purported Misrepresentations, Omissions and Fraud*

According to the Amended Complaint, Defendants publicly stated that they were acting in their clients' best interests when, in fact, Plaintiffs say they were not. Plaintiffs allege, *inter alia,* that, on various websites, Defendants stated: "our clients come first," "we work to understand our clients' needs [and] offer informed advice, and "[w]e will work closely with you

---

[2]    Under Rule 12(b)(6), this motion is based on the allegations in the Amended Complaint, which, if adequately pled, are taken to be true solely for this motion. In addition, Defendant JPMorgan Chase properly raises a factual challenge under Rule 12(b)(1). *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

to understand your unique needs and create solutions designed to help you meeting your financial goals." *Id.* ¶¶ 23, 24, 26. In addition, in certain brochures filed with the SEC, Defendants purportedly provided a description of their advisory services including that "JPMorgan funds are evaluated on the same criteria as unaffiliated funds." *Id.* ¶ 37. Plaintiffs claim that, rather than provide these services, Defendants instead "financially incentivized their financial advisors to cease performing honest and competent account management services." *Id.* ¶¶ 49, 61. Among other things, financial advisors allegedly were "instructed not to bother conducting the research and analysis necessary for client investments," were encouraged "to sell this or that JPM proprietary fund above all else," and were subject to "disciplinary action" if they failed do so. *Id.* ¶¶ 54, 58, 60.

### The Alleged Contracts

Plaintiffs claim to have entered into standardized account agreements with JPMC Bank and JPMS by which all Defendants were obligated to perform certain duties in exchange for fees. *Id.* ¶¶ 9-12, 28, 31, 87. Plaintiffs allege in the most conclusory fashion that Defendants had contractual duties to, "competently and honestly research, analyze, select investments and provide services," and that all Defendants "contracted to comply with all laws, rules, regulations applicable to banks, brokerage firms, and investment advisors . . . ." *Id.* ¶¶ 87, 28. Beyond general references to "financial advisory agreements," Plaintiffs do not identify the type of account agreements they entered into, the particular terms of the account agreements purportedly breached, or, for example, which laws, rules or regulations Defendants' contracted to honor. *Id.* ¶¶ 28, 31, 85-86.

Even though the Motion to Dismiss the Complaint noted these same pleading deficiencies, Plaintiffs did not correct them in their Amended Complaint. Instead, the Amended

Complaint refers to certain "investment management or wrap fee account programs which were offered to customers"— including the Managed Mutual Funds Portfolio ("MMFP") and Chase Strategic Portfolio—and cites to language from a MMFP customer account agreement and certain brochures filed with the SEC. *Id.* ¶ 33. There are no allegations, however, that Plaintiffs entered into the account agreement referenced or participated at all in any of these programs.

### *JPMorgan Chase is Improperly Named as a Defendant*

Defendant JPMorgan Chase is a global financial institution, which, according to the Amended Complaint, "controlled JPMC Bank and JPMS LLC, through which Plaintiffs and their accounts were managed." *Id.* ¶ 17. The Amended Complaint acknowledges that JPMorgan Chase is the parent company of JPMC Bank and JPMS. *Id.* ¶¶ 13-14, 17. Despite recognizing the corporate role of JPMorgan Chase, Plaintiffs claim that JPMorgan Chase directly engaged in certain activities, alleging, for example, that JPMorgan Chase: "select[s] a fund or investment manager for the customer[,]" *id.* ¶ 33; "added hundreds of financial advisors in its branches[,]" *id.* ¶ 45; "established a compensation structure that was not based on client performance," *id.* ¶ 52; and "put pressure on financial advisors to sell proprietary funds through the supervisory review process." *Id.* ¶ 60. As set forth in the Affidavit of Anthony J. Horan ("Horan Aff."), JPMorgan Chase, however, is primarily a holding company and is not a registered broker-dealer. JPMorgan Chase is not in the business of: (i) entering into or executing financial advisory account agreements or similar contracts with individuals; (ii) hiring or employing financial advisors or their direct supervisors; (iii) establishing a compensation structure for financial advisors; (iv) managing assets or operating either brokerage or managed accounts for individuals; (v) charging management fees to individuals; or (vi) purchasing or selling mutual funds, equities or other investment vehicles on behalf of individuals. *See* Horan Aff. ¶¶ 2-10, attached as Exhibit D.

## ARGUMENT

### I.     THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER SLUSA

SLUSA requires dismissal of a covered class action alleging state law statutory or

common law claims if the complaint alleges either (i) a misrepresentation or omission of a

material fact or that defendant used or employed any manipulative or deceptive device or

contrivance, (ii) in connection with the purchase or sale of a covered security.  15 U.S.C. §

77p(b).  To determine whether SLUSA applies, courts disregard artful pleading and look to the

substance of a complaint, not its form.  *See Brown v. Calamos,* 664 F.3d 123, 126 (7th Cir.

2011), *cert. denied*, 132 S.Ct. 2774 (2012) (disregarding complaints' disclaimer, like the

disclaimer here, that there were no allegations of misstatements, omissions or fraud); *Richek v.*

*Bank of America, N.A.*, No. 10-cv-6779, 2011 WL 3421512, at *3 (N.D. Ill. Aug. 4, 2011)

("[W]hen analyzing SLUSA preclusion, courts are guided by the substance rather than the form

of a claim.").  Here, in an effort to evade SLUSA, Plaintiffs attempt to avoid any explicit

allegations of misrepresentations, omissions or fraud and even include an express disclaimer that

they "do not allege fraud, deceptive practices, misrepresentation, or material omission in

connection with the purchase or sale of securities."  Am. Compl. ¶ 1.  Plaintiffs' artful pleading

and disclaimer make no difference—the elements of SLUSA are satisfied and the Amended

Complaint should be dismissed.[3]  If anything, Plaintiffs' repeated attempts to slip away from

---

[3]     Dismissal under SLUSA should be with prejudice. *Brown v. Calamos*, 664 F.3d at 131
(allowing amendment would be both contrary to the forum manipulation rule and not
credible—even if a plaintiff were to delete allegations of fraud, the "likelihood that he would
do everything he could to sneak the allegation back into the case . . . would be so great as to
make it imprudent to allow the complaint to be amended.").  Here, where Plaintiffs already
have amended their complaint (and where their counsel voluntarily dismissed a similar
complaint alleging fraud), dismissal with prejudice is plainly warranted.  Plaintiffs can,
however, attempt to replead their claims under the federal securities laws and SLUSA does
not prevent Plaintiffs from, individually, attempting to bring state law claims.

SLUSA shows precisely why dismissal is warranted. *See Brown v. Calamos*, 664 F.3d, at 131.

### A. The Amended Complaint Alleges a Covered Class Action Based upon State Common Law and Involves a "Covered Security" as Defined Under SLUSA

The Amended Complaint alleges a covered class action as defined under SLUSA. The Amended Complaint is a suit brought on behalf of a putative class of more than 50 persons or by one or more named parties acting as class representatives. Am. Compl. ¶¶ 79-82; 15 U.S.C. § 77p(f)(2). The lawsuit purports to be based upon state common law. Am. Compl. ¶ 1; 15 U.S.C. § 77p(b). In addition, this lawsuit involves a "covered security." Under SLUSA, a "covered security" is one that is traded nationally and listed on a national exchange or that is "issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940." 15 U.S.C. § 77p(f)(3); 15 U.S.C. § 77r(b). Here, Plaintiffs allege that the proprietary funds and investments at issue include mutual funds, which constitute covered securities. *See* Am. Compl. ¶¶ 34, 46; *Kircher v. Putnam Funds Trust*, 403 F.3d 478, 481 (7th Cir. 2005) (holding that "[i]nvestments in mutual funds are covered securities"), *rev'd on other grounds*, 547 U.S. 633 (2006); *Dudley v. Putnam Int'l Equity Fund*, Civ. No. 10-328-GPM, 2010 WL 1838255, at *1 (S.D. Ill. May 5, 2010).

### B. The Amended Complaint Alleges a "Misrepresentation or Omission" or "Manipulative or Deceptive Device or Contrivance"

At its core, this case alleges a fraudulent scheme to sell proprietary products to and at the expense of unsuspecting financial advisory clients. The Amended Complaint is replete with allegations of misrepresentations and/or omissions which are integral to this alleged misconduct and which cannot be separated from Plaintiffs' state law claims. Plaintiffs say that Defendants represented that they would give objective investment advice based solely on their clients' best interests. For example, Plaintiffs allege that, in brochures filed with the SEC describing certain managed account programs, Defendants represented that JPMorgan funds are "evaluated on the

9

same criteria as other funds," or that investments will be "broadly diversified" and "carefully constructed for your investment objective." Am. Compl. ¶ 37, 38. Instead though, Plaintiffs claim that financial advisors "ceased—at Defendants' directive—performing time-consuming research and analysis and were instructed to place as many clients as possible into as many of Defendants' proprietary funds and investments as possible, without regard to their clients' interests." *Id.* ¶ 5.

Statements like these, made in SEC filings, as well as various other statements alleged to have been made by Defendants—*e.g.*, "we . . . offer informed advice," or "we will look closely with you to understand your unique needs" (*id.* ¶¶ 24, 26)—when read in the context of the Amended Complaint as a whole, plainly assert misrepresentations and omissions which should be plead under the federal securities laws."[4] As such, it is hardly surprising that Plaintiffs' counsel themselves characterized the very same core allegations at issue here as false representations, claiming in *Tralins* that "JPMorgan ***falsely represented*** to consumers that JPMorgan's financial advisors were operating under fiduciary duties to the clients they served . . . ." *Tralins* Compl. ¶ 4 (emphasis added).

### 1. *Brown v. Calamos* Requires Dismissal of This Case Under SLUSA

In *Brown*, the Seventh Circuit affirmed the dismissal under SLUSA of a lawsuit alleging, on its face, breach of fiduciary duty and unjust enrichment claims. 664 F.3d 123. Plaintiffs in *Brown* were owners of common stock in a closed end investment fund and claimed that they were harmed when the fund redeemed shares of its preferred stock holders. *Id.* at 125-26. Disregarding plaintiffs' express disclaimer of fraud (like the disclaimer in the Amended

---

[4] SLUSA requires dismissal regardless of whether Plaintiffs' claims could be successfully pled under the federal securities laws. *See Kircher*, 403 F.3d at 484 (SLUSA "covers both good and bad securities claims-*especially* bad ones.").

Complaint), the *Brown* Court looked to the substance of the allegations (not the form) and found

that a misrepresentation had, in fact, been alleged. *Id.* at 126. The complaint in *Brown* stated

that the fund's public statements indicated holders of common stock could realize indefinite

leverage (which apparently was not true), and that an omission (that the fund might at any time

redeem its preferred stock) had implicitly been made. *Id.* at 127. Thus, the *Brown* Court found

dismissal to be warranted because: "the allegations of the complaint make it likely that an issue

of fraud will arise in the course of the litigation" and "the allegation of fraud would be difficult

and maybe impossible to disentangle from the charge of breach of the duty of loyalty that the

defendants owed their investors." *Id.* at 128-29. [5] Here, as in *Brown*, it would be "impossible to

disentangle" the alleged misrepresentations and omissions from the state law claims and it

certainly is "likely that an issue of fraud will arise in the course of the litigation." *Id.*

This conclusion is in line with circuit and district courts decisions throughout the country,

including in this District, that consistently have applied SLUSA to complaints with allegations

similar to those at issue here. For example, in *Felton v. Morgan Stanley*, plaintiffs (like Plaintiffs

here) alleged that retail customers of Morgan Stanley believed they were paying for and

receiving informed investment advice. 429 F. Supp. 2d 684, 687-88 (S.D.N.Y. 2006). In that

case, plaintiffs alleged that, rather than provide objective research reports to plaintiffs, defendant

instead gave biased investment advice based upon defendant's own self-interest (favoring its

investment banking clients). *Id.* at 693. The *Felton* court explained that, although plaintiffs

described the alleged misconduct as a breach of standardized investment agreements, it was also

a "quintessential example of a fraudulent omission of a material fact under the federal securities

---

[5]     Courts commonly refer to SLUSA's requirement of "material misstatements or omissions" or
        "manipulative or deceptive devices or contrivances" as fraud, but scienter is not required to
        apply SLUSA. *Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 698-99 (S.D. Ill. 2007).

laws." *Id. See also Dabit v. Merrill, Lynch, Pierce, Fenner & Smith Inc.*, 395 F.3d 25, 48, n.17 (2d Cir. 2005), *rev'd on other grounds*, 547 U.S. 71 (2006) (finding that contract claim for "biased advice" alleged a misrepresentation where plaintiffs also alleged that defendant had promised to provide objective advice); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 302 (3d Cir. 2005) ("The misrepresentation issue is straightforward. Plaintiffs' complaint is replete with allegations that [defendant] disseminated biased and materially misleading investment research.").

In *Segal v. Fifth Third Bank, N.A.,* the Sixth Circuit affirmed a dismissal under SLUSA where Plaintiffs alleged, *inter alia,* that defendant Fifth Third "failed to inform trust beneficiaries that their trust accounts would be invested in proprietary mutual funds . . . [and] the Bank purported to 'provide planning 'advice' under the guise that the advice was customized when, in fact, it [was] not . . . .'" *Segal,* 581 F.3d 305, 309-10 (6th Cir. 2009). *See also Bourrienne v. Calamos*, No. 10-CV-7295, 2011 WL 3421559, at *5 (N.D. Ill. Aug. 4, 2011) (allegations that fund was sold to plaintiffs under "false premise" "necessarily assume[s] a purported failure to disclose"); *S.C. Rabin v. JPMorgan Chase Bank, N.A.,* No. 06 C 5452, 2007 WL 2295795, at *1 (N.D. Ill. Aug. 3, 2007) (dismissing state law claims where defendant purportedly schemed to invest "fiduciary account assets into its proprietary mutual fund . . . without regard to whether such investments were in the best interests of the beneficiaries"); *Kutten v. Bank of America,* No. 06-0937 (PAM), 2007 WL 2485001, at *5 (E.D. Mo. Aug. 29, 2007) (allegations that defendant transferred trust assets to proprietary funds under the guise of "providing individual and customized management of assets," constitute misrepresentations).

### 2. Plaintiffs Cannot Avoid SLUSA Preemption by Artfully Editing the Earlier *Tralins* Complaint

In the *Tralins* case, Plaintiffs' counsel alleged claims based on the very same underlying

conduct at issue here. *See, e.g.*, *Tralins* Compl. ¶ 69 ("JPMorgan acting fraudulently, with bad faith, gross negligence, for self-interested reasons, or without due care, breached its fiduciary duties by selling Plaintiff and the Class members JPMorgan's proprietary funds and investments"); *id.* ¶ 61 ("JPMorgan deliberately deceived customers regarding the true reason behind the sale of its proprietary funds and investments . . . ."). The *Tralins* complaint also expressly alleged misrepresentations and omissions. *Id.* ¶ 92 ("JPMorgan misrepresented its proprietary funds' and investments' returns in marketing materials, enticing Plaintiff and the other members of the Class to purchase JPMorgan's products."); *id.* ¶ 75 ("JPMorgan's deceptive acts and practices, including omissions, were designed to mislead reasonable consumers acting reasonably under the circumstances.").

Although, here, Plaintiffs avoid using words such as "fraud," "deceit," "omission" or "misrepresentation," the conduct complained of is the same as in *Tralins*—*e.g.*, "encourag[ing] financial advisors to sell this or that JP Morgan proprietary fund above all else;" "exploit[ing]" clients of Washington Mutual Bank by "switching" their assets to JPM proprietary funds; and engaging in a "self-dealing scheme aimed at enriching themselves at the expense of Plaintiffs." Am. Compl. ¶¶ 58, 72, 74, 99. Indeed, entire sentences in the Amended Complaint are lifted, nearly verbatim, from the *Tralins* complaint. For example, compare:

- Am. Compl. ¶ 99 ("Defendants have been unjustly enriched through a self-dealing scheme aimed at enriching themselves at the expense of Plaintiffs and the other members of the Class.") with *Tralins* Compl. ¶ 84 ("JPMorgan has been unjustly enriched through a self-dealing scheme aimed at enriching itself at the expense of Plaintiff and the other members of the Class.");

- Am. Compl. ¶ 43 ("By 2011, in fact, JP Morgan was the only bank among the 10 largest fund companies still engaging in this practice [selling proprietary funds and investments], according to the research firm Strategic Insights.") with *Tralins* Compl. ¶ 27 ("By contrast, in 2011, JPMorgan was the only bank among the 10 largest fund companies still engaging in this practice [selling proprietary funds and investments], according to the research firm Strategic Insights.");

- Am. Compl. ¶ 66 ("In 2010, JP Morgan's mutual funds drew in over $18.6 billion, solidifying JP Morgan's place as the second most productive firm in the market at the time.") with *Tralins* Compl. ¶ 36 ("In 2010, JPMorgan's mutual funds drew in over $18.6 billion, solidifying JPMorgan's place as the second most productive firm in the market at the time.").

Plaintiffs' efforts to reinvent their claims cannot succeed. As succinctly held by the Southern District of Indiana, the "blotting out of certain allegations" will not prevent SLUSA dismissal:

> Tellingly, in [the earlier complaint], the plaintiffs appear to be much more forthcoming with their allegations of failure to disclose or fraud or both. For instance, in [the earlier complaint] the plaintiffs expressly stated that [defendant] 'disingenuously assumed,' 'continued falsely to depict,' 'misrepresented the facts,' 'made no disclosure,' and 'did not disclose.' . . . In the Court's view, allowing Jorling's class action complaint to survive SLUSA because he carefully blotted out certain allegations would undermine federal securities law.

*Jorling,* 836 F. Supp. 2d at 835. *See also Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-cv-709-JPG, 2008 WL 2397582, at *3 (S.D. Ill. June 10, 2008) (even though complaint "scrupulously avoid[ed] using the words fraud, misrepresentation, or omission" it was still precluded by SLUSA), *aff'd*, 556 F.3d 639 (7th Cir. 2009); *Segal*, 581 F.3d at 310-11 (a claimant cannot "elude SLUSA's prohibitions by editing out covered words" or using "artful pleading").

### C. The Material Misstatements, Omissions or Manipulative or Deceptive Devices or Contrivances Were "In Connection With" the Purchase or Sale of a Covered Security

Courts broadly construe the "in connection with" requirement of SLUSA. Notably, in *Merrill Lynch, Pierce, Fenner, & Smith Inc. v. Dabit*, 547 U.S. 71, 85-87 (2006), holding that SLUSA applies to "holders" of securities, not just purchasers and sellers, the Supreme Court explained:

> The presumption that Congress envisioned of a broad construction [of 'in connection with the purchase or sale of a covered security'] follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment. A narrow reading of the

14

statute would undercut the effectiveness of the 1995 Reform Act and thus run contrary to SLUSA's stated purpose . . . .

*Dabit*, 547 U.S. at 86 (citing with approval *SEC v. Zanford*, 535 U.S. 813, 822, 824 (2002) which held that to satisfy the "in connection with" language of Rule 10(b) it is enough that the fraud alleged "coincide" with the securities transaction). Following *Dabit*, circuit and district courts have looked to whether the misconduct complained of "coincides" with the purchase and sale of securities. *See Rowinski*, 398 F.3d at 302 (looking at, *inter alia,* whether the alleged fraudulent scheme coincides with purchase and sale of securities); *Richek*, 2011 WL 3421512, at *4 ("Thus, under *Dabit*, 'it is enough that the fraud alleged 'coincide' with a securities transaction'") (quoting *Dabit*, 547 U.S. at 85)).

The misconduct alleged in the Amended Complaint "coincide[s]" with the purchase and sale of the proprietary funds and investments. The purported self-dealing scheme entailed selling proprietary funds to clients, either outright or by switching client assets from non-proprietary funds into JPMorgan funds. *See, e.g.*, Am. Compl. ¶ 69 ("In addition to pushing for new investments in proprietary funds and investments, Defendants pressured and incentivized their financial advisors to engage in the questionable practice of "switching" their clients' existing investment from non-JPMorgan funds to JPMorgan proprietary investments."). The class itself is defined as "all financial advisory clients of Defendants . . . whose funds were placed in Defendants' and/or their affiliates' proprietary mutual funds and investments and who were charged investment management fees . . . ." *Id.* ¶ 1. Consequently, the misconduct alleged could only have taken place if securities were bought and sold.[6]

---

[6] Paragraph 77 of the Amended Complaint contains a definition of the class which deletes reference to investments in Defendants' proprietary mutual funds. *See id.* ¶ 77. Although it is unclear how Plaintiffs intend to define the class, even under this definition, Plaintiffs cannot avoid the fact that the cornerstone of this lawsuit is the sale of proprietary products.

## II.    PLAINTIFFS' STATE LAW COUNTS SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Amended Complaint should also be dismissed because each count fails to state a claim upon which relief can be granted.[7]  To survive a Rule 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must state a claim that is not merely "conceivable" but "plausible on its face."  *Id.* at 570.  Here, each of Plaintiffs' claims also should be subject to the even more rigorous federal pleading standards under Rule 9(b), which applies to all claims that include "averments of fraud," even if the claim at issue does not require proof of fraud.  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("Rule 9(b) applies to 'averments of fraud,' not claims of fraud").

### A.  Plaintiffs Have Failed to Allege the Elements of Breach of Contract (Count I)

To state a claim for breach of contract, Plaintiffs must adequately plead (1) the existence of a valid contract; (2) Plaintiffs' performance under the contract; (3) Defendants' breach of the contract; and (4) resulting damages.  *See JP Morgan Chase v. J.H. Elec. of NY, Inc.*, 69 A.D.3d 802, 803 (N.Y. App. Div. 2010).[8]

#### 1.    Plaintiffs Have Failed to Identify a Contract

Plaintiffs do not adequately plead the existence of a valid contract with Defendants. This

---

[7]    Plaintiffs now have had ample opportunity to address the deficiencies in their claims (which they failed to do) and dismissal with prejudice is warranted.  *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347-48 (7th Cir. 2012).

[8]    Except as noted below, Plaintiffs' claims are analyzed under New York law because Plaintiffs allege that the relevant contracts are under New York law.  Am. Compl. ¶ 86.  *See, e.g.*, *Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, No. 02 C 0978, 02 C 3436, 2003 WL 151929, at *14-15 (N.D. Ill. Jan. 21, 2003) (applying contractual choice of law clause to breach of fiduciary duty and other related tort claims where the contract formed the basis of the fiduciary relationship).  Defendants do not concede the application of New York law for any other purpose.

element requires more than mere allegations of the existence of a contract; it requires that Plaintiffs "plead the provisions of the contract upon which the claim is based." *Howell v. Am. Airlines, Inc.*, No. 05-CV-3628 (SLT), 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006); *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (dismissing claim where "plaintiff has not specifically identified the contract (or contracts) at issue and has not specified the terms of the agreement that defendant purportedly breached").

Plaintiffs here include nothing more than general allegations that Defendants contracted to comply with, *inter alia*, all "laws, rules, and regulations applicable to banks, brokerage firms, and investment advisors," and broadly claim that Defendants were obligated to "conduct thorough and accurate research of investments and market conditions" and "manage investments in the best interests of the client." Am. Compl. ¶¶ 28, 31. Plaintiffs fail to identify any specific contractual provisions from which these broad-based responsibilities purportedly derive, resorting instead to alleging agreements in vague and conclusory terms. *See id.* ¶ 31 (referring to "these financial advisory agreements").

Rather than quote from or reference a contract between the parties, Plaintiffs amended the Complaint to add allegations regarding a customer account agreement for MMFP (a managed mutual fund program) and brochures filed with the SEC for CSP (Chase Strategic Portfolio) and an unidentified advisory program. Plaintiffs make the bare assertion that these documents evidence contractual duties owed to them by all Defendants. *Id.* ¶ 40. There are no allegations, however, that Plaintiffs signed customer account agreements for MMFP or CSP or participated in these programs. Moreover, references to brochures, which are not contracts, cannot substitute for allegations identifying the particular contract(s) and terms purportedly breached.

### 2. Plaintiffs Have Failed to Plead a Breach of a Contract

"Stating in a conclusory manner that an agreement was breached does not sustain a claim

of breach of contract [under New York law]." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008). Plaintiffs broadly allege that by engaging in a self-dealing scheme, Defendants breached their contractual obligations to act in the best interests of their clients. Am. Compl. ¶¶ 2, 3. Plaintiffs though do not allege that the proprietary funds were unsuitable for them, that the funds did not perform well when compared to similar investments, or that, overall, the purchase of the funds were not in Plaintiffs' best interests. For example, Plaintiffs allege that the funds had been "vetted and approved by the portfolio management team in New York." *Id.* ¶ 58. Yet Plaintiffs never explain why this admitted process of vetting and approval by a portfolio management team is insufficient under their alleged contracts. Likewise, Plaintiffs rely on a conclusory statement that the CSP carried a fee higher than what might be charged by unspecified independent financial planners. *Id.* ¶ 48. But Plaintiffs do not explain why fees on CSP are comparable to fees charged by other financial advisors, nor do they allege that the fees were excessive compared to similar products.

### 3. Plaintiffs Have Failed to Adequately Plead Damages

To state a claim for breach of contract, Plaintiffs must also allege that they were harmed as a direct result of the alleged breach. *City of Peekskill v. Continental Ins. Co.*, 166 F.3d 1199, at *1, *2 (2d Cir. 1998) (affirming dismissal of contract claim where plaintiff "suffered no damages"). A party is not entitled to a judgment merely by alleging that the counterparty has inadequately performed; rather, the plaintiff must show that it was damaged as a result of the breach. *Cramer v. Spada*, 610 N.Y.S.2d 662, 664 (N.Y. App. Div. 1994) (affirming dismissal because "the failure to prove damages is . . . fatal to [a] plaintiff's breach of contract" claim). Further, "an allegation that defendant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*." *Int'l Bus. Machs. Corp. v. Dale*, No. 7:11-cv-951 (VB), 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011) (dismissing counterclaims

where counter-claimant failed to plead facts showing how she was damaged by plaintiff's alleged conduct).

Plaintiffs have not pled that they suffered any harm or injury as a result of Defendants' alleged conduct. In the section of the Amended Complaint entitled "Defendants' Misconduct Caused the Class Substantial Harm," Plaintiffs allege merely that they were "forced to pay substantial fees for investment advisory services" along with other "upfront fees." Am. Compl. ¶ 75. At best, these are just demands for a refund. The Amended Complaint does not allege the harm Plaintiffs suffered to warrant that refund, or that Defendants failed to perform their contractual duties. Plaintiffs allege the purpose of the contract was to "serve the best interests of [] clients" and to "maximize client returns." *Id.* ¶ 2. Yet nowhere in the Amended Complaint do Plaintiffs allege that they were harmed because this purpose was frustrated by Defendants' actions. Indeed, an equally plausible conclusion is that Plaintiffs benefitted from the actions alleged—investments in proprietary funds may have performed well, "maximiz[ing] clients returns." *Id.*

### B.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty (Count II)

Plaintiffs' claim for breach of fiduciary duty should be dismissed because it is duplicative of their claim for breach of contract and because Plaintiffs fail to adequately plead any of the elements of a breach of fiduciary duty claim.

### 1.    Plaintiffs' Claim for Breach of Fiduciary Duty is Duplicative

Plaintiffs cannot bring a "duplicative" breach of fiduciary duty claim against financial advisors where the claim is "based upon the same facts and theories as [plaintiff's] breach of contract claim." *Brooks v. Key Trust Co. Nat'l Ass'n*, 26 A.D.3d 628, 630 (N.Y. App. Div. 2006). This is true even where the breach of contract claim fails as a matter of law. *Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305 A.D.2d 268, 268-69 (N.Y. App. Div. 2003) (claim for

breach of fiduciary duty dismissed as "duplicative of the breach of contract claim" where court also affirmed dismissal of breach of contract claim).  In *Brooks*, the court found that, although "plaintiff demonstrated that defendants' role as his financial advisor with discretionary authority to manage his investment accounts created a fiduciary duty," this was insufficient to sustain a claim for breach of fiduciary duty, which relied on the same facts and theories as the breach of contract claim.  26 A.D.3d at 630.

Like plaintiff in *Brooks,* Plaintiffs here have failed to allege any independent claims based on fiduciary duties allegedly owed by Defendants.  Indeed, the Amended Complaint acknowledges the total overlap between the breach of contract and breach of fiduciary duty claims.  *See, e.g.*, Am. Compl. ¶ 6 (by allegedly pressuring financial advisors to sell JP Morgan proprietary funds, "Defendants breached their contractual and fiduciary duties").  Even the counts that state the two claims contain nearly identical allegations.  *Compare id.* ¶ 87 ("Defendants had duties to exercise their contractual obligations . . . including the obligation to competently and honestly research, analyze, select investments and provide services, in exchange for account-related fees that Plaintiffs and the other members of the class paid to defendants."), *with id.* ¶ 93 ("Defendants owed fiduciary duties to Plaintiffs . . . to competently and honestly research, analyze, and select investments and provide services, in exchange for account-related fees that Plaintiffs and the other members paid to the defendants.").

## 2.    Plaintiffs Fail to Plead the Elements of a Breach of Fiduciary Duty

Under New York law, Plaintiffs must plead three elements to state a claim for breach of fiduciary duty: (1) a fiduciary duty existed between plaintiff and defendant; (2) defendant breached that duty; and (3) damages resulted from the breach.  *Sheehy v. New Century Mtg. Corp.*, 690 F. Supp. 2d 51, 62 (E.D.N.Y. 2010).  Plaintiffs fail to plead these elements and their breach of fiduciary duty claim should, therefore, be dismissed.

*No Duty.*  Although Plaintiffs repeatedly make conclusory references to the fiduciary duties allegedly owed and publicly acknowledged by the Defendants, *see* Am. Compl. ¶¶ 22-27, they fail to specify how and why these duties operate in the context of Plaintiffs' alleged investment accounts.  Plaintiffs fail to reference any agreements in which the Plaintiffs contractually agreed to a fiduciary relationship, and they fail to plead whether they opened discretionary or non-discretionary accounts with the Defendants.  To the extent the accounts at issue may be non-discretionary, Defendants "do not owe clients a fiduciary duty."  *Celle v. Barclays Bank P.L.C.*, 48 A.D.3d 301, 302 (N.Y. App. Div. 2008); *see Fesseha*, 205 A.D.2d at 268-69 ("The claim for breach of fiduciary duty was properly dismissed since plaintiff opened a nondiscretionary trading account, and the relationship between plaintiff and defendant was merely that of broker and customer.").

*No Breach.*  Plaintiffs have also failed to adequately plead a breach of fiduciary duty. Using terms similar to those used in connection with their breach of contract allegations, Plaintiffs allege that Defendants violated their fiduciary duties by failing to act in their clients' best interests and by pushing clients to purchase proprietary funds. Am. Compl. ¶ 94.  The Amended Complaint does not allege that these funds were imprudent or unsuitable investments for Plaintiffs.  Nor are there any allegations that these investments in proprietary funds did not perform well, either independently or relative to comparable investments.  As with their contract claim, Plaintiffs allege no specific basis on which to state a claim that the Defendants breached their fiduciary duties.  *See supra* at Sec. II.A.2.

*No Damage.*  Damages are a required element of a claim for breach of fiduciary duty. *See Moscato v. Tie Techs., Inc.,* Civ. No. 04-2487 (GBD), 2005 WL 146806, at *6 (S.D.N.Y. Jan. 21, 2005) (in order to state a claim for breach of fiduciary duty, plaintiff must allege that the

breach resulted in and was the proximate cause of damages). Just as Plaintiffs fail to plead how they were damaged by the alleged breach of contract, they also have fail to allege how they were damaged as a result of Defendants' purported breach of fiduciary duty. *See supra* at Sec. II.A.3.

### C. Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count I) and for Unjust Enrichment (Count III)

Under New York law, both claims for the implied covenant of good faith and fair dealing and claims for unjust enrichment fail where "a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Courts will dismiss such claims even where the breach of contract claim is also dismissed as insufficient. *See, e.g., Ahead Realty LLC v. India House, Inc.,* 92 A.D.3d 424, 425 (N.Y. App. Div. 2012) (dismissing claim for breach of covenant of good faith and fair dealing as duplicative even though breach of contract claim was also dismissed); *Unclaimed Prop. Recovery Serv., Inc. v. UBS PaineWebber Inc.,* 870 N.Y.S.2d 361, 362 (N.Y. App. Div. 2009) (dismissing unjust enrichment claim as duplicative even though contract claim was also dismissed).

Here, Plaintiffs make no attempt to differentiate their good faith and fair dealing claim from the underlying breach of contract claim. The two claims are even contained within the same count and rely on the same supporting paragraphs. *See* Am. Compl. ¶¶ 84-91. Similarly, Plaintiffs allege that they have sued to reclaim "investment management fees" paid "in exchange for investment advice and related services" that "Defendants contracted to provide." *Id.* ¶ 2. *See also id.* ¶¶ 28, 29, 31, 32, 85. Because the relationship between the parties was purportedly governed by account agreements, Plaintiffs' claim for unjust enrichment is precluded as a matter of law. *Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*, 939 N.Y.S.2d 745, 2011 WL 5962804, at *8 (N.Y. Sup. Ct. 2011) (dismissing unjust enrichment claim by fund investors related to fees collected by fund managers where contract governed fees at issue).

### D.     Plaintiffs Fail to State a Claim Against JPMorgan Chase and JPMIM

The Amended Complaint independently fails to plead a basis for liability against

JPMorgan Chase or JPMIM.  Plaintiffs plead that they entered into financial advisory agreements

with JPMC Bank and JPMS and that the financial advisors who purportedly owed Plaintiffs a

fiduciary duty were employed by JPMC Bank and JPMS.  Am. Compl. ¶¶ 9-12, 22.  As such,

neither JPMorgan Chase nor JPMIM can be liable for breach of contract or of fiduciary duty.

*Crabtree v. Tristart Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991) ("It is hornbook law

that a non-signatory to a contract cannot be named as a defendant in a breach of contract

action"); *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 115 (S.D.N.Y. 2009) ("a breach of fiduciary

duty requires finding that a fiduciary relationship existed between the parties.").[9]

Plaintiffs plead no connection to JPMIM, other than that JPMIM was a subsidiary of

JPMorgan Chase.  Plaintiffs cannot simply impute liability to JPMorgan Chase and JPMIM by

inappropriately grouping Defendants together—*i.e.*, "alleging indiscriminately that 'defendants'

performed or omitted to perform some act."  *Kennedy v. Nicastro*, 503 F. Supp. 1116, 1122

(N.D. Ill. 1980) (Plaintiffs must "make a good faith differentiation throughout the complaint that

will enable each defendant to know with what he or it is charged").

Furthermore, Plaintiffs' conclusory allegations that JPMorgan Chase "controlled JPMC

Bank and JPMS LLC," are not sufficient to assert a claim.  In order to hold a parent company

directly liable for the acts of a subsidiary, a plaintiff must first satisfy the requisite elements for

"piercing the corporate veil."  *See Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 529 (D. Del.

---

[9]     Plaintiffs' claim under the implied covenant of good faith and fair dealing fails under the
same rational—as pled, only "the conduct of each party to a contract is subject to the implied
covenant of good faith and fair dealing." Am. Compl. ¶ 86.  The unjust enrichment claim also
fails because "formulaic recitation" of the required elements are not sufficient. *See id.* ¶¶ 98-
102; *In re Trinsum Grp., Inc.*, 460 B.R. 379, 396 (S.D.N.Y. 2011).

2008) ("While no single factor justifies a decision to disregard the corporate entity, some combination of the [factors] [are] required"). JPMorgan Chase and JPMIM are incorporated in Delaware, and, therefore, Delaware law governs this question. *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 933 (7th Cir. 1996). To pierce the veil, Delaware courts apply a multifactor test, including whether defendants (i) disregarded corporate formalities; (ii) undercapitalized subsidiaries; or (iii) siphoned corporate funds. *Liafail, Inc. v. Learning 2000, Inc.*, Nos. Civ.A. 01-599, 01-678, 2002 WL 31414141, at *6 (D. Del. Oct. 23, 2002). Plaintiffs do not plead any of these factors.

## III. PLAINTIFFS' CLAIMS AGAINST JPMORGAN CHASE SHOULD BE DISMISSED FOR LACK OF STANDING

Plaintiffs' claims against JPMorgan Chase also should be dismissed for lack of standing. For a plaintiff to have standing "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation and punctuation omitted). A defendant may bring a facial or factual challenge to standing. *Apex,* 572 F.3d at 443-44 (a facial challenge is on the pleadings, whereas a factual challenge may be raised by submitting to the court "external facts").

Here, under both a facial and factual challenge, Plaintiffs lack standing to bring their claims against JPMorgan Chase. Plaintiffs do not sufficiently plead a connection between JPMorgan Chase and their purported injuries (which result from an alleged breach of contract and fiduciary duty by third parties—*i.e.*, JPMC Bank and JPMS).[10] Moreover, JPMorgan Chase

---

[10] Plaintiffs also lack standing to bring claims against JPMIM. There are no allegations that JPMIM entered into a contract with Plaintiffs or employed financial advisors who owed fiduciary duties to Plaintiffs. In fact, no connection at all is alleged between Plaintiffs and

is primarily a holding company that is not a registered broker-dealer and has not engaged in the activities complained of. Among other things, JPMorgan Chase is not in the business of: managing assets or operating brokerage or managed accounts, charging management fees, or hiring, employing or establishing compensation structures for financial advisors. Horan Aff. ¶¶ 5-8. As such, Plaintiffs' suit against JPMorgan Chase is without a legitimate case or controversy and should be dismissed. *See Johnson v. Geico Cas. Co.,* 673 F. Supp. 2d 244, 253-54 (D. Del. 2009) (granting 12(b)(1) factual standing challenge of defendants where it was related entities (who also were co-defendants) that had issued the contracts in dispute).

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss the Amended Complaint in its entirety, with prejudice.

Dated: December 21, 2012

Respectfully submitted,

/s/ Stephen V. D'Amore
Stephen V. D'Amore (#6224741)
Michael S. Pullos (#6293587)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
 (312) 558-5600
sdamore@winston.com

and

Jonathan K. Youngwood (pro hac vice)
Janet A. Gochman (pro hac vice)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000
*Attorneys for Defendants*

---

JPMIM. As such, the Amended Complaint does not allege an injury traceable to JPMIM and Plaintiffs claims against JPMIM also should be dismissed pursuant to Rule 12(b)(1).

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a copy of the foregoing

**Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended**

**Complaint** was served on counsel for all parties electronically via the CM/ECF system on

December 21, 2012.

Dated: December 21, 2012                                   <u>/s/ Stephen V. D'Amore</u>