**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

------------------------------------------------------------------------x
                                                         :

| | | |
|---|---|---|
| PATRICIA HOLTZ, AUNT MARLENE FOUNDATION, STEVEN GREENSPON, and TERENCE HEUEL, individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | Case No. 1:12-CV-07080 |
| | : | |
| vs. | : | Hon. John W. Darrah |
| | : | |
| J.P. MORGAN SECURITIES LLC, JPMORGAN CHASE BANK, N.A., JPMORGAN CHASE & CO., and J.P. MORGAN INVESTMENT MANAGEMENT INC., | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 2

ARGUMENT .................................................................................................................................. 3

I.    THE AMENDED COMPLAINT SHOULD NOT BE DISMISSED UNDER SLUSA ........ 3

    A.    THE AMENDED COMPLAINT NEITHER ALLEGES MISREPRESENTATIONS OR OMISSIONS OF MATERIAL FACT NOR USE OR EMPLOYMENT OF A MANIPULATIVE OR DECEPTIVE DEVICE ............................................................................................................ 3

        1.    The Amended Complaint Alleges Straightforward Claims for Breach of Fiduciary Duty and Breach of Contract, and Defendants' Attempts to Recast Those Allegations Should Be Rejected .................................................... 3

        2.    The Authorities Relied on by Defendants Do Not "Require Dismissal of This Case" and Are Otherwise Distinguishable .................................................... 8

    B.    THE ALLEGED WRONGFUL ACTS WERE NOT DONE "IN CONNECTION WITH" THE PURCHASE OR SALE OF A SECURITY ............................................................... 10

II.    PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT ................................... 13

    A.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES THE EXISTENCE OF AN AGREEMENT ................................................................................................. 14

    B.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES BREACH ....................................... 16

    C.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES DAMAGES .................................... 16

III.    PLAINTIFFS STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY ...................... 17

    A.    PLAINTIFFS HAVE APPROPRIATELY PLED ALL ELEMENTS OF A CLAIM FOR BREACH OF FIDUCIARY DUTY ............................................................................. 17

    B.    PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY IS NOT DUPLICATIVE OF PLAINTIFFS' BREACH OF CONTRACT CLAIM ................................................... 19

IV.    PLAINTIFFS STATE CLAIMS FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND FOR UNJUST ENRICHMENT .................. 20

V.    PLAINTIFFS HAVE STANDING TO STATE, AND HAVE STATED, CLAIMS AGAINST JPMORGAN CHASE AND JPMIM ............................................................... 22

CONCLUSION .............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atmosphere Scis., LLC v. Schneider Advanced Techs., Inc.*,
  2012 WL 4240759 (S.D.N.Y. Sept. 19, 2012)........................................................20

*Barbara v. MarineMax, Inc.*,
  2012 WL 6025604 (E.D.N.Y. Dec. 4, 2012) .........................................................21

*Bestolife Corp. v. Am. Amicable Life*,
  5 A.D. 3d 211 (N.Y. App. Div. 2004) ...................................................................18

*Bridgeway Corp. v. Citibank, N.A.*,
  132 F. Supp. 2d 297 (S.D.N.Y. 2001)...................................................................13

*Brown v. Calamos*,
  664 F.3d 123 (7th Cir. 2011) .............................................................................8, 9

*Bullmore v. Banc of Am. Secs. LLC*,
  485 F. Supp. 2d 464 (S.D.N.Y. 2007)..............................................................18, 20

*Bullmore v. Ernst & Young Cayman Islands*,
  45 A.D.3d 461 (N.Y. App. Div. 2007) ..................................................................20

*Burns v. Prudential Secs.*,
  218 F. Supp. 2d 911 (N.D. Ohio 2002)...................................................................8

*Cain v. Simon & Schuster, Inc.*,
  2012 WL 2574747 (S.D.N.Y. July 3, 2012) .........................................................14

*Celle v. Barclays Bank P.L.C.*,
  48 A.D. 3d 301 (N.Y. App. Div. 2008) .................................................................18

*In re Charles Schwab Corp. Secs. Litig.*,
  257 F.R.D. 534 (N.D. Cal. 2009).............................................................................7

*Cheatham v. Ky. Lottery Corp.*,
  2008 U.S. Dist. LEXIS 1391 (W.D. Ky. Jan. 4, 2008).........................................12

*Citi Mgmt. Group, Ltd. v. Highbridge House Ogden, LLC*,
  45 A.D.3d 487 (N.Y. App. Div. 2007) ..................................................................21

*ConnectU LLC v. Zuckerberg*,
  522 F.3d 82 (1st Cir. 2008).....................................................................................4

*Consolidation Servs., Inc. v. KeyBank Nat'l Assoc.*,
  185 F.3d 817 (7th Cir. 1999) ..................................................................................8

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*,
　　2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006) ...............................................13, 15

*Designers N. Carpet, Inc. v. Mohawk Indus., Inc.*,
　　153 F. Supp. 2d 193 (E.D.N.Y. 2001) ...................................................................15

*Dimsey v. Bank of N.Y.*,
　　2006 WL 3740349 (N.Y. Sup. Ct.. Aug. 24, 2006) ..............................................19

*Drake v. City of Detroit*,
　　2008 WL 482283 (6th Cir. Feb. 21, 2008) ..............................................................4

*Drulias v. ADE Corp.*,
　　2006 WL 1766502 (D. Mass. June 26, 2006) ..........................................................7

*E\*Trade Savings Bank v. Nat'l Settlement Agency, Inc.*,
　　2008 WL 2902576 (S.D.N.Y. July 25, 2008) ........................................................14

*Fantozzi v. Axsys Techs., Inc.*,
　　2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008)......................................................21, 22

*Felton v. Morgan Stanley Dean Witter & Co.*,
　　429 F. Supp. 2d 684 (S.D.N.Y. 2006)................................................................9, 10

*Freeman Investments, L.P. v. Pacific Life Insurance Co.*,
　　-- F.3d -- , 2013 WL 11884 (9th Cir. Jan. 2, 2013)..................................................6

*French v. First Union Securities, Inc.*,
　　209 F. Supp. 2d 818 (M.D. Tenn. 2002) ...............................................................12

*Gavin v. AT&T Corp.*,
　　464 F.3d 634 (7th Cir. 2006) ...............................................................10, 11, 12

*Goodman Mfg. Co. L.P. v. Raytheon Co.*,
　　1999 WL 681382 (S.D.N.Y. Aug. 31, 1999).........................................................15

*Grund v. Del. Charter Guarantee & Trust Co.*,
　　788 F. Supp. 2d 226 (S.D.N.Y. 2011).....................................................................4

*JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*,
　　69 A.D.3d 802 (N.Y. App. Div. 2010) ..................................................................13

*Labajo v. Best Buy Stores, L.P.*,
　　478 F. Supp. 2d 523 (S.D.N.Y. 2007).....................................................................22

*LaSala v. Bank of Cyprus Pub. Co. Ltd.*,
　　510 F. Supp. 2d 246 (S.D.N.Y. 2007)....................................................................11

*Levinson v. PSCC Servs., Inc.*,
    2010 WL 5477250 (D. Conn. Dec. 29, 2010) ........................................................................6

*Linares v. Richards*,
    2009 WL 2386083 (E.D.N.Y. Aug. 3, 2009) ..................................................................21, 22

*Maalouf v. Salomon Smith Barney, Inc.*,
    2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003) ....................................................................22

*Mandelblatt v. Devon Stores*,
    132 A.D.2d 162 (N.Y. App. Div. 1987) ............................................................................20

*McPhatter v. Sweitzer*,
    2003 U.S. Dist. LEXIS 15878 (M.D.N.C. Sept. 8, 2003) ..................................................12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
    547 U.S. 71 (2006) ............................................................................................................10

*Mervyn v. Nelson Westerberg, Inc.*,
    2012 WL 6568338 (N.D. Ill. Dec. 17, 2012) ....................................................................19

*Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*,
    273 F. Supp. 2d 436 (S.D.N.Y. 2003) ..............................................................................22

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*,
    102 F.3d 660 (2d Cir. 1996) ..............................................................................................22

*Norman v. Salomon Smith Barney*,
    350 F. Supp. 2d 382, 387 (S.D.N.Y. 2004) ..............................................................4, 5, 6

*Novus Partners, Inc. v. Vainchenker*,
    938 N.Y.S.2d 228 (N.Y. Sup. Ct. 2011) ............................................................................16

*Richek v. Bank of Am., N.A.*,
    2011 WL 3421512 (N.D. Ill. Aug. 4, 2011) ........................................................................3

*Roland v. Green*,
    675 F.3d 503 (5th Cir. 2012), *cert. granted*, -- U.S. -- , 2013 WL 203548 (Jan. 18,
    2013) ..................................................................................................................................11

*Scalp & Blade, Inc. v. Advest, Inc.*,
    309 A.D. 2d 219 (N.Y. App. Div. 2003) ............................................................................19

*Segal v. Fifth Third Bank, N.A.*,
    581 F.3d 305 (6th Cir. 2009) ..............................................................................................9

*Sergeants Benevolent Ass'n Annuity Fund v. Renck*,
    19 A.D. 3d 107 (N.Y. App. Div. 2005) ........................................................................18, 23

*Stoody-Broser v. Bank of Am., N.A.*,
 2012 WL 1657187 (N.D. Cal. May 10, 2012) .........................................................................7

*Strigliabotti v. Franklin Resources, Inc.*,
 398 F. Supp. 2d 1094 (N.D. Cal. 2005) ...............................................................................12

*Ticketreserve, Inc. v. Viagogo, Inc.*,
 656 F. Supp. 2d 775 (N.D. Ill. 2009) ....................................................................................4

*Weiss v. La Suisse*,
 69 F. Supp. 2d 449 (S.D.N.Y. 1999)....................................................................................13

*In re Wireless Tel. 911 Calls Litig.*,
 2005 WL 1564978 (N.D. Ill. June 3, 2005) .........................................................................14

### STATUES

Private Securities Litigation Reform Act of 1995 ........................................................................1

Securities Litigation Uniform Standards Act of 1998, 15 U.S. C. §§ 77(p), 78(bb)(f) ......... passim

### OTHER AUTHORITIES

6 Charles Alan Wright, *et al.*, Federal Practice & Procedure § 1476 (2d ed. 1990)........................4

Fed. R. Civ. P. 8(a)(2)..................................................................................................................14

Plaintiffs Patricia Holtz, Aunt Marlene Foundation, Steven Greenspon, and Terence Heuel (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Motion to Dismiss the Amended Complaint, filed by J.P. Morgan Securities LLC ("JPMS"), JPMorgan Chase Bank, N.A. ("JPMC Bank") and J.P. Morgan Investment Management Inc. ("JPMIM," and together with JPMS and JPMC Bank, "Defendants").

## PRELIMINARY STATEMENT

Defendants contend that Plaintiffs' breach of fiduciary duty and contract claims are preempted by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §§ 77(p), 78(bb)(f) ("SLUSA"). SLUSA bars investors in public securities from launching securities fraud actions disguised as state law claims in order to avoid heightened pleading and other requirements for securities fraud actions under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Defendants assert that Plaintiffs' Amended Complaint (the "AC") should be dismissed under SLUSA because it asserts misrepresentation and/or omission claims and Defendants' wrongful conduct was "in connection with" the sale or purchase of covered securities.

In an attempt to recast Plaintiffs' claims as fraud claims, Defendants mischaracterize and essentially rewrite the AC. Defendants incorrectly assert that the AC contains allegations of wrongful conduct involving misstatements or omissions, fraud, or deceptive acts that could form the basis of a securities fraud claim. In truth, the AC alleges that Plaintiffs purchased investment advisory services from Defendants pursuant to a contract, and that Defendants breached their contractual and fiduciary obligations when they failed to render the services for which Plaintiffs paid. No reasonable reading of the AC could contort Plaintiffs' allegations into a disguised securities fraud action.

Defendants also wrongly argue that the alleged wrongful conduct was "in connection with" the sale or purchase of a covered security. Defendants breached their contractual and fiduciary obligations by failing to provide investment advisory services, an act that did not coincide with the sale or purchase of any covered securities. Indeed, such breaches occurred even absent any purchase of any security.

The AC states sufficient non-fraud claims under state law for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. Likewise, Defendants' standing arguments should be rejected.

## STATEMENT OF FACTS

Plaintiffs, and the class they seek to represent, are individuals who paid fees to Defendants for services they did not receive consistent with the contractual and fiduciary duties owed to them. [1] By this action, Plaintiffs seek to recover the account-related fees paid by them for services not performed.

Defendants had discretionary investment authority over, and managed, Plaintiffs' investment accounts. [2] In doing so, Defendants were obligated to provide skilled, competent and honest research, analysis, due diligence and advisory services. They were to provide research and analysis, advice on alternative accounts and fee structures, and investment management services. [3] Performance of these services in the best interests of the customer is at the heart of the financial advisor-customer relationship. [4]

---

[1] *See* AC, ¶¶21-74. Hereinafter, citations to the AC are made simply as "¶__." In addition, citations herein to Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint are made as "Defs.' Br. at __."

[2] ¶¶21-32.

[3] ¶¶22; 31; 36; 45.

[4] ¶¶22-27; 30-32.

Since 2007, Defendants breached their duties to provide these services to their account-holding customers, earning fees for the services that they did not perform.[5] On September 5, 2012, Plaintiffs sued Defendants alleging breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment. The allegations solely concern Defendants' failure to satisfy fiduciary and contractual duties owed to Plaintiffs. On November 26, 2012, Plaintiffs filed the AC. The amendment did not substantially change the nature of the allegations.

## ARGUMENT

## I. THE AMENDED COMPLAINT SHOULD NOT BE DISMISSED UNDER SLUSA

SLUSA bars plaintiffs from asserting claims based on state law involving a "covered class action" that allege the defendant (a) misrepresented or omitted a material fact in connection with the purchase or sale of a covered security, or (b) used or employed a manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.[6] The claims set forth in the AC do not fall within the ambit of SLUSA.

### A. THE AMENDED COMPLAINT NEITHER ALLEGES MISREPRESENTATIONS OR OMISSIONS OF MATERIAL FACT NOR USE OR EMPLOYMENT OF A MANIPULATIVE OR DECEPTIVE DEVICE

#### 1. The Amended Complaint Alleges Straightforward Claims for Breach of Fiduciary Duty and Breach of Contract, and Defendants' Attempts to Recast Those Allegations Should Be Rejected

The AC does not allege any misrepresentation or omission of a material fact, or manipulative or deceptive device, in connection with a purchase or sale of covered securities. Defendants assert that the complaint must be dismissed because it is purportedly "replete with

---

[5] ¶¶49-74.

[6] *See Richek v. Bank of Am., N.A.*, 2011 WL 3421512, at *3 (N.D. Ill. Aug. 4, 2011) (citations omitted).

3

allegations of misrepresentations and/or omissions…."[7]  However, rather than explaining why specific allegations in the AC violate SLUSA, Defendants ask the Court to look behind the allegations to divine what is possibly implied.  Indeed, much of Defendants' argument is devoted to a discussion of a complaint filed in a different court, by different plaintiffs alleging different claims and theories of recovery, which has no bearing whatsoever on this Court's analysis of the AC's allegations.[8]  Defendants' arguments should be rejected.

Plaintiffs' allegations are consistent with numerous other lawsuits sustained under SLUSA that allege breaches of fiduciary and contractual duties arising from their agreements and relationship with defendants.  As the court explained in *Norman v. Salomon Smith Barney*, "[w]hile plaintiffs may not avoid SLUSA pre-emption simply by artful pleading that avoids the actual words 'misrepresentation' or 'fraud,' neither may defendants avoid every possible claim by recasting any lawsuit in which a securities broker is a defendant into a securities fraud action."[9]  Defendants' attempts in this action to recast the AC should be rejected.

The decision in *Norman* is instructive because it was decided in a similar context.  The plaintiff in *Norman* alleged that, as here, the defendant had discretionary investment authority

---

[7] Defs.' Br. at 9.

[8] *See ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 96 (1st Cir. 2008) (amended complaint controls when considering motion to dismiss); *Drake v. City of Detroit*, 2008 WL 482283, at *2 (6th Cir. Feb. 21, 2008) (stating that a prior "complaint is a nullity, because an amended complaint supersedes all prior complaints"); *In re Wireless Tel. 911 Calls Litig.*, 2005 WL 1564978, at *1 (N.D. Ill. June 3, 2005) ("It is well settled that an amended complaint supersedes the prior complaint, rendering the latter a nullity"); *Ticketreserve, Inc. v. Viagogo, Inc.*, 656 F. Supp. 2d 775, 779 (N.D. Ill. 2009) ("amended complaint controls even though it may contradict allegations set forth in the original complaint," finding that "the original complaint is in effect withdrawn"); 6 Charles Alan Wright, *et al.*, Federal Practice & Procedure § 1476 (2d ed. 1990) (stating that "[o]nce an amended pleading is interposed, the original pleading no longer performs any function in the case").

[9] 350 F. Supp. 2d 382, 387 (S.D.N.Y. 2004) (citations omitted); *accord Grund v. Del. Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226, 240 (S.D.N.Y. 2011) ("Courts have held that it is the allegations made in the complaint that form the basis of their SLUSA analysis: '[b]ecause the determination of whether SLUSA applies may only be made by reference to what a party has alleged, and not what it could have alleged, courts should be wary of a defendant's attempts to recast the plaintiff's complaint as a securities lawsuit in order to have it preempted by SLUSA.'") (citations omitted).

over the accounts at issue, the plaintiff and the class paid annual fees on the accounts, and the

defendant had claimed in public advertising and statements to provide individual portfolio

management guided by the experience and "breadth and depth" of its research department.  The

plaintiff alleged that the defendant breached its contractual and fiduciary duties to the plaintiff

and the class because the defendant's research department was tainted by conflicts of interest and

self-dealing.  Courts in the Southern District of New York have, over the years, dismissed many

cases under SLUSA.  Yet, the district court in *Norman* found the analysis in that case to be quite

simple:

> Here, the gravamen of the Complaint is plainly a straightforward breach claim:
> plaintiffs purchased a service (portfolio management) pursuant to a contract, paid
> the fees for that service under the contract, and now allege that they did not
> receive the full range of services paid for, and suffered damages as a result.
> Plaintiffs further allege that, in the course of providing some of the contracted-for
> services, defendant breached its fiduciary duty to plaintiffs to act in their best
> interests and not engage in activities that would place its interests in conflict with
> theirs.  Regardless of the factual merits of these claims, they are not securities
> fraud claims, nor claims that depend on establishing material misrepresentations
> or omissions in connection with the purchase or sale of securities, within the
> meaning of SLUSA.[10]

The court also noted that, even if the complaint could have been "read to suggest that [the

defendant's] analysts may have made material misstatements or omissions in their analysis of

securities," the plaintiff did not allege that he or the class had seen or relied on the research

reports.[11]  Instead, the "claim [was] simply that [the defendant] said it would do something in

exchange for plaintiffs' fees, and then didn't do what it had promised."[12]  As the *Norman* court

explained, "[t]he fact that the actions underlying the alleged breach could also form the factual

predicate for a securities fraud action by different plaintiffs cannot magically transform every

---

[10] *Norman*, 350 F. Supp. 2d at 387 (citations omitted).

[11] *Id.*

[12] *Id.*

dispute between broker-dealers and their customers into a federal securities claim – the mere 'involvement of securities [does] not implicate the anti-fraud provisions of the securities laws."[13]

More recently, in *Freeman Investments, L.P. v. Pacific Life Insurance Co.*,[14] the Ninth Circuit examined a breach of contract claim and concluded for similar reasons that it "survives SLUSA," notwithstanding the fact that the plaintiffs' complaint alleged "systematic concealment" and "deceitful conduct" designed "to generate undeserved revenues."[15] Nevertheless, when "[s]tripped to its essence, plaintiffs' latest complaint allege[d] that [the defendant] charged [the plaintiffs] too much for life insurance…."[16] As the court explained:

> "[W]hile a contract dispute commonly involves a 'disputed truth' about the proper interpretation of the terms of a contract, that does not mean one party omitted a material fact by failing to anticipate, discover and disabuse the other of its contrary interpretation of a term in the contract." Just as plaintiffs cannot avoid SLUSA through crafty pleading, defendants may not recast contract claims as fraud claims by arguing that they "really" involve deception or misrepresentation.[17]

In holding that the plaintiffs' breach of contract claims were not precluded by SLUSA, the court further explained that the plaintiffs had "allege[d] that their insurer promised one thing and delivered another. That's a straightforward contract claim that doesn't rest on misrepresentations or fraudulent omission."[18]

---

[13] *Id*. at 387-88 (quoting *Spielman v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2001 WL 1182927, at *3 (S.D.N.Y. Oct. 9, 2001)).

[14] -- F.3d -- , 2013 WL 11884 (9th Cir. Jan. 2, 2013).

[15] *Id*. at **2-3.

[16] *Id*. at *2.

[17] *Id*. at *3 (quoting and citing *Webster v. N.Y. Life Ins. & Annuity Corp.*, 386 F. Supp. 2d 438, 441 (S.D.N.Y. 2005); citing *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973) ("Not every breach of a stock sale agreement adds up to a violation of the securities law.")) (internal citations omitted).

[18] *Freeman Invs.*, 2013 WL 11884, at *6; *see Levinson v. PSCC Servs., Inc.*, 2010 WL 5477250, at *10 (D. Conn. Dec. 29, 2010) ("[A] defendant may not recast plaintiff's Complaint as a securities fraud class action so as to have it preempted by SLUSA. Defendants' interpretation of the AC would recast every breach of contract or breach of fiduciary claim into allegations of fraud. This Court refuses to hold that the AC contains a misrepresentation or omission based on essentially an assertion that you have to

These principals apply with equal force to Defendants' Motion. Plaintiffs should not be deemed to have alleged misrepresentations or omissions of material fact. Instead, to the extent Plaintiffs identify statements by Defendants, those statements are intended to, and do, further support and explain Plaintiffs' claim that Defendants owed them contractual and fiduciary duties and the nature of those duties.[19] Moreover, Plaintiffs do not allege that they relied on or even saw any such statements. Indeed, having contracted to receive "financial advisory services,"[20] Plaintiffs gave discretionary investment authority over their accounts to their financial advisors. Plaintiffs allege that they paid for certain objective investment advisory and management services that Defendants, in breach of their contractual and fiduciary duties, did not then provide. In other words, the AC makes straightforward claims for breach of fiduciary duty and breach of contract. Accordingly, Defendants' attempts to recast this action as grounded in misrepresentations or omissions should be ignored, and Plaintiffs' claims should not be dismissed under SLUSA.[21]

---

assume in any lawsuit there's a disputed truth, and if there's a disputed truth, then there is either an untrue statement or there is an omission of material fact.") (internal quotation marks and citations omitted).

[19] Defendants disingenuously reference that Plaintiffs sue on "SEC filings" to make the Court believe that securities claims were alleged. However, Plaintiffs do not reference the JPMIM Form ADV or Brochures here as evidence of misrepresentation in connection with the purchase or sale of a covered security; rather, Plaintiffs reference the JPMIM Form ADV as evidence of JPMIM's position within JPMorgan's corporate structure, and reference ADV Brochures as evidence of fiduciary and contractual standards for its managed account programs.

[20] ¶2.

[21] *See Stoody-Broser v. Bank of Am., N.A.*, 2012 WL 1657187, at *4 (N.D. Cal. May 10, 2012) (denying motion to dismiss breach of fiduciary duty claim under SLUSA where plaintiff and class were "'beneficiaries of irrevocable trusts with no investment powers'" and where "amended complaint omit[ted] reference to and d[id] not seek to recover from any potential misrepresentation and … 'by changing the language, plaintiffs have necessarily altered the gravamen of their claims as well'") (citation omitted); *see also In re Charles Schwab Corp. Secs. Litig.*, 257 F.R.D. 534, 551 (N.D. Cal. 2009) (rejecting argument that state law claims were preempted by SLUSA because, even though the complaint alleged misrepresentations underpinning federal securities claims, the state law claims "[were] not predicated upon a misrepresentation in connection with a securities transaction"); *Drulias v. ADE Corp.*, 2006 WL 1766502, at *2 (D. Mass. June 26, 2006) ("While the Supreme Court recently embraced a broad interpretation of SLUSA, it did not suggest that all claims of breach of fiduciary duty in connection with the purchase or sale of securities are sucked into the SLUSA sluice. As such, SLUSA does not apply to

### 2. The Authorities Relied on by Defendants Do Not "Require Dismissal of This Case" and Are Otherwise Distinguishable

Defendants cite several cases in which courts found that SLUSA required the dismissal of state law claims. These cases, however, are easily distinguished from the issues presented here.

In *Brown v. Calamos*,[22] Judge Posner of the Seventh Circuit affirmed the lower court's dismissal of a lawsuit alleging breach of fiduciary duty and unjust enrichment. The court held that the plaintiffs' claims contained allegations of misrepresentations and omissions, and were therefore barred under SLUSA. Defendants argue that the *Brown* decision is controlling and necessitates dismissal of the AC. However, in *Brown*, the plaintiffs alleged an actual misrepresentation in the form of a public statement made by the defendants, and asserted that the defendants omitted to disclose certain conflicts of interests. Moreover, the court held that the plaintiffs' claim appeared to "rest on" an allegation of fraud.[23] Here, the claims in the AC are predicated upon Defendants' failure to fulfill their fiduciary and contractual obligations and neither rest on any misrepresentations or omissions by, nor any allegation of fraud against, Defendants. Plaintiffs make no explicit (or implicit) allegations of misrepresentations, omissions or fraud. Additionally, the fiduciary obligations of Plaintiffs' investment advisors arose by operation of law.[24] Thus, any statements by Defendants identified in the Amended Complaint merely reflect admissions regarding the nature of their obligations. These admissions, however,

---

the breach of fiduciary claim based on conflict of interest.") (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006)) (internal citation omitted); *Burns v. Prudential Secs.*, 218 F. Supp. 2d 911, 915 (N.D. Ohio 2002) (rejecting argument that SLUSA applied to breach of fiduciary duty claim regarding unauthorized trades made without investors' approval and where investors were not thereafter "inform[ed] accurately and fully as to material matters"); *cf. Consolidation Servs., Inc. v. KeyBank Nat'l Assoc.*, 185 F.3d 817, 823 (7th Cir. 1999) (holding that unfulfilled promises could not be recast as misrepresentations because such a view "would turn every breach of contract into a fraud").

[22] 664 F.3d 123 (7th Cir. 2011).

[23] *Id*. at 130-31.

[24] *See* Part III(A), below.

are not necessary for, and can be easily "disentangle[d]" from, Plaintiffs' fiduciary duty claims.[25]

Accordingly, *Brown* is inapposite, and its rationale cannot reasonably be applied to this case.

Similarly, Defendants rely on the decision in *Segal v. Fifth Third Bank, N.A.*[26] In that case, the Sixth Circuit affirmed the district court's dismissal of plaintiffs' claims given the plaintiffs' allegations of misrepresentation, omission and manipulation in connection with a purchase or sale of a security.[27] Based on the plaintiffs' express allegations of fraud, the court had no option but to conclude that the plaintiffs' claims were barred under SLUSA. Here, the AC does not contain similar allegations of misrepresentations, omissions, or manipulative scheme.

Defendants also rely on *Felton v. Morgan Stanley Dean Witter & Co.*[28] in support of their SLUSA argument. In *Felton*, the plaintiffs alleged that they agreed to purchase investment services from the defendant pursuant to contracts that were subject to federal and state law, as well as the rules and customs of the New York Stock Exchange, the National Association of Securities Dealers, and other industry self-regulatory organizations and exchanges.[29] One of the rules upon which the plaintiff's breach of contract claim was based prohibited the defendant

---

[25] *Brown*, 664 F.3d at 129.

[26] 581 F.3d 305 (6th Cir. 2009).

[27] *Id.* at 309-10. According to the Sixth Circuit, "Segal's amended complaint alleges misrepresentations, material omissions and manipulation. Consider: it alleges that Fifth Third failed to inform trust beneficiaries that their trust accounts would be invested in proprietary mutual funds; that the Bank carried out a 'planned corporate scheme' that was 'intended to (and did) lure grantors, testators, and others to designate [Fifth Third as trustee],' Am. Compl. ¶¶ 25, 9; that the Bank purported to 'provide planning 'advice' under the guise that the advice was customized when, in fact, it [was] not,' Am. Compl. ¶ 35; that the Bank 'did not deal honestly, ethically, fairly, and/or in good faith' with the class, Am. Compl. ¶ 6; that the Bank intentionally and 'knowingly overcharged' its trust clients, Am. Compl. ¶ 75; and that the Bank's policies amounted to a 'scheme.' Am. Compl. ¶¶ 25, 29, 38-39, 49-51, 59, 64, 66-67, 70, 75, 84. The complaint incorporates each allegation and makes them applicable to all counts of the complaint. The amended complaint also alleges that Fifth Third made misrepresentations to the trust beneficiaries and otherwise manipulated them 'in connection with' the sale of Fifth Third mutual funds." *Id.*

[28] 429 F. Supp. 2d 684 (S.D.N.Y. 2006).

[29] *Id.* at 687.

9

from omitting material facts if the omission of that fact would cause the communication to be misleading.[30]   The plaintiffs alleged that the defendant violated this provision by failing to disclose that its research was compromised by conflicts of interest.   The court dismissed the plaintiffs' claims because it found that the plaintiffs alleged a fraudulent scheme.  Stripped down to its essence, the plaintiffs' breach of contract claim was based on the defendant's omission of material facts.

The AC, however, does not make any allegations of a fraudulent scheme.  Plaintiffs' state law claims are not based on a failure to disclose material facts.   Instead, Plaintiffs allege that Defendants failed to provide the contracted-for services and breached fiduciary duties.

### B.   THE ALLEGED WRONGFUL ACTS WERE NOT DONE "IN CONNECTION WITH" THE PURCHASE OR SALE OF A SECURITY

Defendants' SLUSA argument also fails because the "in connection with" requirement has not been satisfied.  In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,[31] the Supreme Court adopted a broad reading of the "in connection with" requirement holding that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else."[32]   Notwithstanding that decision's liberal interpretation of the "in connection with" requirement, the Seventh Circuit requires a close nexus between the alleged fraud and the purchase or sale of a "covered security."

For example, in *Gavin v. AT&T Corp.*,[33] the Seventh Circuit held that, even post-*Dabit*, "the 'connection' requirement must be taken seriously."  The court cautioned defendants that "a mere 'but for' cause linking a securities transaction … to a subsequent injury … does not make

---

[30] *Id.* at 693.

[31] 547 U.S. 71 (2006).

[32] *Id.* at 85.

[33] 464 F.3d 634, 640 (7th Cir. 2006).

10

the injury one suffered 'in connection with the purchase or sale of securities.'"[34]   The court

explained, "[o]f course there is a literal sense in which anything that happens that would not have

happened but for some prior event is connected to that event," but found that to consider the

fraud in question as "in connection with" the purchase or sale of covered securities would be "in

the same sense the fraud is connected to the Big Bang."[35]   Illustrating the potential for absurd

results in applying *Dabit* too liberally, the court reminded litigants that SLUSA's scope is broad

but not unlimited, "[o]therwise SLUSA would apply to a class action by shareholders who

suffered paper cuts when they opened the letters informing them of their rights under the

merger."[36]

By way of analogy in *Gavin*, Judge Posner posited that the mere fact that the omission at

issue in that case was made following the disposition through merger of "covered securities" was

nonessential to the plaintiffs' claim, and thus failed to satisfy SLUSA's "in connection with"

inquiry.   He compared the defendants' attempt to charge plaintiff-shareholders a fee for

exchanging their shares in the merged entity in *Gavin* to a run-of-the-mill fraudster inviting

someone "to pay $7 for Linux software that he could download for free from the Internet."[37]

Both are outside the scope of SLUSA.   Similarly, here, the fact that Defendants, in their capacity

as fiduciaries, were in the business of providing investment analysis, does not mean that

Defendants' fiduciary breaches occurred "in connection with" the sales or purchase of covered

---

[34] *Id*. at 639.

[35] *Id.*

[36] *Id.* at 639; *see LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 272-73 (S.D.N.Y. 2007) (district court cautioned against overreaching interpretations of the "in connection with" requirement); *Roland v. Green*, 675 F.3d 503, 519-520 (5th Cir. 2012) (adopting the Ninth Circuit test and holding that "'a misrepresentation is 'in connection with' the purchase or sale of securities if there is a relationship in which the fraud and the stock sale coincide or are *more than tangentially related*'") (emphasis in original), *cert. granted*, -- U.S. -- , 2013 WL 203548 (Jan. 18, 2013).

[37] *Id.*

securities. Plaintiffs' allegations that Defendants' breached contractual and fiduciary obligations by failing to conduct the requisite research and due diligence in performance of their duties owed to Plaintiffs would have the same force and implications if Defendants' caused Plaintiffs to be invested in real estate or cattle or nothing at all. Defendants' fiduciary breaches and contractual breaches occurred when they failed to perform as fiduciaries and pursuant to the terms of their contract. Even if Defendants' conduct did not result in investments in covered securities, Plaintiffs and the proposed class would be harmed by not receiving the services for which they paid their high management fees.[38]

Similarly, in *Strigliabotti v. Franklin Resources, Inc.*,[39] the court found that claims by investors for over-payment of various fees associated with their mutual funds were not barred by SLUSA. The Court held that the fraud "must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves," and more than "some tangential relation to the securities transaction."[40]

---

[38] Importantly, *Gavin* also introduces a temporal aspect into the "in connection with" requirement: "[I]f something happens after the transaction is complete to make it less worthwhile to you, such as the [car] dealer's replacing a tire that has worn out with one that is the wrong size, it is a separate wrong, not anything connected with the original sale…" *Id.* at 639. Again, Plaintiffs here are not simply alleging a single wrong in connection with a single sale of a covered security. Plaintiffs were injured whether or not Defendants caused the purchase, sale or holding of investments in Plaintiffs' discretionary accounts with Defendants.

[39] 398 F. Supp. 2d 1094 (N.D. Cal. 2005).

[40] *Id.* at 1100; *see also Cheatham v. Ky. Lottery Corp.*, 2008 U.S. Dist. LEXIS 1391, **6–8 (W.D. Ky. Jan. 4, 2008) (noting that "SLUSA's scope is…not unlimited," holding that defendants' alleged misrepresentations and omissions concerning returns under the KLC pension plan had nothing to do with the trading of any particular security but related to the relationship between the KLC plan and the employees); *French v. First Union Securities, Inc.*, 209 F. Supp. 2d 818, 824 (M.D. Tenn. 2002) ("in order for a breach to be 'in connection with' securities sales, the breach of fiduciary duty must do more than simply implicate securities[; r]ather, there must be a showing of a nexus between the fraud and a securities transaction"); *McPhatter v. Sweitzer*, 2003 U.S. Dist. LEXIS 15878, *10 (M.D.N.C. Sept. 8, 2003) (denying SLUSA motion to dismiss where "[t]he involvement of securities as alleged in Plaintiffs' complaint [was] merely tangential").

Here, Plaintiffs' claim did not coincide with the sale or purchase of any securities. According to Defendants, the AC alleges that Defendants breached their contractual and fiduciary duties when they sold proprietary funds to Plaintiffs.[41]  That is wrong.  The AC makes it abundantly clear that Plaintiffs' contracted with Defendants to purchase financial advisory services, and were injured when Defendants' failed to deliver those services.  Defendants' assertion that this misconduct was "in connection with" the sale or purchase of covered securities is precisely the type of "but-for" causal argument that the Seventh Circuit warned against in *Gavin*.  Plaintiffs would still have viable claims even if Defendants did not cause them to invest in any of Defendants' proprietary funds given the fees that Plaintiffs paid for services Defendants failed to render.  Accordingly, the Court should reject Defendants' argument.

## II.  PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT

"In order to state a breach of contract claim [under New York law], 'a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."[42]  However, "[e]ach element need not be separately pleaded."[43]

Importantly, "'there is no requirement in the Federal Rules of Civil Procedure that the details of a breach of contract claim be pleaded with particularity.  Instead, the short, plain notice rule of [FRCP] 8 applies.'"[44]  Plaintiffs adequately allege breach of contract.

---

[41] Defs.' Br. at 15.

[42] *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 2006 WL 6217754, at *6 (S.D.N.Y. Mar. 31, 2006) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)); *accord JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803 (N.Y. App. Div. 2010).  Defendants do not contest that plaintiff has adequately alleged performance – *i.e.*, the second element of the claim.

[43] *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001) (citation omitted).

[44] *Contractual Obligation Prods., LLC*, 2006 WL 6217754, at *6 (quoting *Weiss v. La Suisse*, 69 F. Supp. 2d 449, 462 (S.D.N.Y. 1999)).  Defendants incorrectly assert that Rule 9(b)'s heightened pleading standard applies to Plaintiffs' claim for breach of contract.  *See* Defs.' Br. at 16.  Plaintiffs' breach of contract claim does not allege fraud or mistake.  Instead, Plaintiffs' breach of contract claims are subject

13

## A. THE AMENDED COMPLAINT ADEQUATELY ALLEGES THE EXISTENCE OF AN AGREEMENT

Plaintiffs' AC adequately pleads the existence of a valid contractual obligations owed by Defendants. For example, Plaintiffs allege that they each contracted to receive services from a Defendant.[45] Plaintiffs plead that "Defendants … owed contractual obligations to Plaintiffs and the other members of the Class pursuant to the standardized account agreements executed by and between Defendants and Plaintiffs and members of the Class."[46] Among other things, these "financial advisory agreements" obligated defendants to "(i) conduct thorough and accurate research of investments and market conditions, and (ii) manage investments in the best interest of the client."[47]

---

to the liberal pleading standard of Rule 8, which simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Cain v. Simon & Schuster, Inc.*, 2012 WL 2574747, at *2 (S.D.N.Y. July 3, 2012) ("[a] plaintiff alleging a breach of contract claim is required only to provide a defendant with a 'short, plain notice' of the claims against it pursuant to Rule 8"); *E\*Trade Savings Bank v. Nat'l Settlement Agency, Inc.*, 2008 WL 2902576 (S.D.N.Y. July 25, 2008) (applying Rule 8 to the plaintiffs' breach of contract claim); *Weiss v. La Suisse*, 69 F. Supp. 2d 449, 462 (S.D.N.Y. 1999) ("[T]his is not a fraud claim, and there is no requirement in the Federal Rules of Civil Procedure that the details of a breach of contract claim be pleaded with particularity. Instead, the short, plain notice rule of [Rule] 8 applies.").

[45] *See* ¶9 ("Plaintiff [Holtz] at all times relevant hereto contracted to receive financial advisory services from JPMS LLC (through its successor Chase Investment Services Corp. …) …."); ¶10 ("Plaintiff [Aunt Marlene Foundation] at all times relevant hereto contracted to receive investment management services from JPMC Bank…."); ¶11 ("Plaintiff [Greenspon] at all times relevant hereto contracted to receive investment management services from JPMC Bank…."); ¶12 ("Plaintiff [Heuel] at all times relevant hereto contracted to receive financial advisory services from JPMS LLC (through its successor Chase Investment Services Corp. …) ….").

[46] ¶28 (emphasis added). The AC explains that, "[u]nder their financial advisory agreements, Defendants contracted to comply with all laws, rules, and regulations applicable to banks, brokerage firms, and investment advisors, as well as customs and standards in the financial services industry, representations made in marketing and advertising, and duties arising from common law." *Id.*; *see* ¶29 ("Defendants were required to discharge their obligations under these agreements in a commercially reasonable manner….").

[47] ¶31; *accord* ¶30 ("Defendants agreed to act in the best interests of its clients and committed to 'exercise discretion' and perform duties 'consistent with applicable fiduciary standards.'").; *see* ¶2 ("The financial advisory services Defendants contracted to provide included providing objective research and analysis, analyzing and advising on alternative accounts and fee structures to maximize client returns, and providing investment management services."); ¶8; ¶31 ("Defendants were required to disregard their own economic interests where they conflicted with those of their clients.").

14

The AC also alleges that Defendants and members of the Class entered into account agreements for a "Managed Mutual Funds Portfolio" program.[48] The agreements governing this program required Defendants to conduct the same due diligence and monitoring for JPMorgan funds as they did for nonproprietary funds.[49]

Indeed, Plaintiffs dedicate twelve paragraphs spanning five pages to addressing the agreements between the parties and Defendants' resulting contractual duties.[50] Defendants even concede that Plaintiffs made "allegations that Defendants contracted" to "conduct thorough and accurate research of investments and market conditions and manage investments in the best interests of the client."[51] Having alleged the existence of the agreements governing Defendants' contractual obligations to Plaintiffs and the members of the proposed Class, Plaintiffs satisfy the first element of a breach of contract claim.[52]

---

[48] ¶34.

[49] *Id.*

[50] *See* ¶¶28-40.

[51] Defs.' Br. at 17; *see also id.* (conceding that the AC presents "allegations regarding a customer account agreement" for a managed mutual fund program); *id.* at 16 ("Plaintiffs allege that the relevant contracts are under New York law.").

[52] *Compare Contractual Obligation Prods., LLC*, 2006 WL 6217754, at *6 ("[P]laintiff's general averments to certain promises by [defendant] and agreements between the parties are sufficient to allege the first element of a breach of contract claim-the existence of an agreement.") (citations omitted); *accord Designers N. Carpet, Inc. v. Mohawk Indus., Inc.*, 153 F. Supp. 2d 193, 197 (E.D.N.Y. 2001) (denying motion to dismiss and "find[ing] that at this stage, the complaint provides the short and plain statement that [FRCP] 8 requires" even though plaintiff "[did] not describe the contract or contracts other than to say agreements existed between it and [the defendant]" and "[did] not allege whether these agreements are written or oral, when they were made, the length of time they covered, the quantity of carpets involved, or any other terms") (citing *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 304 (S.D.N.Y. 2001)); *see also Goodman Mfg. Co. L.P. v. Raytheon Co.*, 1999 WL 681382, at *13 (S.D.N.Y. Aug. 31, 1999) ("the Complaint does not expressly refer to a specific clause of the Agreement, which is not necessary under the pleading requirements of the Federal Rules of Civil Procedure") (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) ("While a prudent plaintiff complaining of a breach of contract should allege what representations or warranties were breached, it is not clear that notice pleading requires such specificity.")).

## B.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES BREACH

Plaintiffs also adequately allege breach.  The AC alleges that "Defendants breached …

their contractual obligations to provide Plaintiffs and the Class with the skilled, objective,

competent and honest financial advisory services for which they were paid."[53]  Plaintiffs explain

that "Defendants … instituted centralized policies and practices designed to obliterate the …

contractual responsibilities owed to clients by pushing and incentivizing their financial advisors

to put the interests of Defendants ahead of the financial interests of the clients."[54]  As a result,

"[b]y utilizing a generous bonus structure that was designed to, and did, incentivize financial

advisors not to perform the services owed by contract …, and by otherwise pressuring financial

advisors to forego any research or analysis of non-JPMorgan-sponsored funds and investments,

Defendants breached their contractual … duties"[55]

## C.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES DAMAGES

Plaintiffs also adequately allege damages.  The AC need not allege damages with

particularity.[56]  Nevertheless, Plaintiffs allege that "Defendants failed to satisfy their contractual

---

[53] ¶8.

[54] ¶3.

[55] ¶6; *accord* ¶54 ("In addition [to] providing their financial advisors with improper financial incentives, Defendants subjected their financial advisors to intense pressure to place clients in proprietary products in breach of the … contractual obligations owed to clients.  Notably, Defendants' employees were instructed not to bother conducting the research and analysis necessary for client investments, in breach of their … contractual obligations to clients."); ¶61 ("Defendants' financial advisors ignored their … contractual obligations to their clients and instead pushed clients into Defendants' proprietary funds and investments, regardless of whether these investments were in their clients' best interests, allowing Defendants to grow their assets under management and to collect management (and other) fees."); ¶66 ("Ultimately, JPMorgan's practice of foisting its proprietary funds and investments on clients to generate substantial management fees was successful. … Defendants' obtained this level of 'success' at the expense of their clients in breach of their … contractual obligations.").

[56] *See Novus Partners, Inc. v. Vainchenker*, 938 N.Y.S.2d 228 (N.Y. Sup. Ct. 2011) (explaining that, on a motion to dismiss for failure to state a cause of action in New York state court, "'a pleading need only state allegations from which damages attributable to the defendant's conduct may reasonably be inferred.'  Therefore, plaintiff's failure to allege damages with the necessary specificity does not preclude its claim for breach of contract.") (quoting *Fielding v. Kupferman*, 65 A.D.3d 437, 442 (N.Y. App. Div. 2009) (internal citation omitted).

obligations under the financial advisory agreements …, resulting in economic harm to Plaintiffs and the other members of the Class."[57]  The AC explains that Defendants' breaches resulted in damages through Defendants' improper collection of management fees from Plaintiffs.[58]

Notwithstanding Defendants' apparent demands for particularity, Plaintiffs' AC adequately alleges breach of contract.  Defendants' motion to dismiss this cause of action should be denied.

## III.   PLAINTIFFS STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY

### A.   PLAINTIFFS HAVE APPROPRIATELY PLED ALL ELEMENTS OF A CLAIM FOR BREACH OF FIDUCIARY DUTY

In dealing not for the benefit of Plaintiffs and the putative class, but instead putting their own financial interests ahead of the interests of their clients, Defendants breached the stringent fiduciary duties imposed on them by virtue of their status as investment advisors.

First, as alleged in the AC, Defendants owed fiduciary duties to Plaintiffs on account of Defendants' status as investment advisors.[59]  Under New York law, "liability for a breach of fiduciary duty 'is not dependent solely upon an agreement or contractual relation between the

---

[57] ¶32; *see also id.* ("This economic harm was part and parcel of a strategy implemented and executed by Defendants, and their senior managers, which was designed to breach these contractual duties so that Defendants' economic interests were placed ahead of the interests of Defendants' clients.").

[58] *See, e.g.,* ¶8 ("Since at least 2007, Defendants breached their duties to provide these services to their financial advisory clients and collected fees for services that they did not perform.  By this action, Plaintiffs and members of the Class seek to recover these management fees."); *accord* ¶3 ("As a result of this decision, and the policies and practices that flowed from it, Defendants were able to substantially growth their assets under management, while collecting not only the management fees that are the subject of this lawsuit, but also layers of additional fees collected by the JPMorgan-affiliated funds and investments themselves, and other JPMorgan-affiliated entities that managed and provided services to such JPMorgan funds and investments."); ¶42 ("This new strategy allowed Defendants to collect account management fees from clients, as well as fees associated with the transfer of those investments into Defendants' proprietary funds and investments in many cases (*i.e.*, upfront fees)."); ¶48 ("While an independent financial planner may charge a one-percent fee to manage assets for ordinary investors, JPMorgan charged an annual fee as high as 1.6 percent of assets to some customers in the CSP account. On top of this, JPMorgan collected upfront fees for steering clients from non-proprietary fund families into JPM-sponsored fund families, as well as collecting fees from the proprietary funds and investments themselves.").

[59] *See, e.g.,* ¶¶21-27.

fiduciary and the beneficiary.'"[60]  Instead, "[i]n determining whether a fiduciary relationship exists, 'a court will look to whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge.'"[61]  It is well established that investment advisors are fiduciaries because, by nature of the relationship, investors retain investment advisors to provide expert advice concerning investments.[62]  Accordingly, Plaintiffs have adequately pled Defendants' fiduciary status.

Second, Defendants' deliberate self-dealing constitutes a direct breach of their fiduciary duties.  As alleged, "[i]n an attempt to recover from declining profits and to bolster JPM's diminished balance sheet," Defendants determined to increasingly steer "clients into proprietary funds and investments in order to collect more fees and 'earn' more profits."[63]  Defendants did so at the expense of Plaintiffs and the class, as "Defendants financially incentivized their financial advisors to cease performing honest and competent account management services."[64]  As a result, Defendants provided biased advice and at times placed "clients in JPMorgan

---

[60] *Sergeants Benevolent Ass'n Annuity Fund v. Renck*, 19 A.D. 3d 107, 110 (N.Y. App. Div. 2005) (quoting Restatement (Second) of Torts § 874, Comment b).

[61] *Id.* (quoting *Wiener v. Lazard Freres & Co.*, 241 A.D. 2d 114, 122, (N.Y. App. Div. 1998)).

[62] *See, e.g., id.*; *Bullmore v. Banc of Am. Secs. LLC*, 485 F. Supp. 2d 464, 470-471 (S.D.N.Y. 2007) ("[i]nvestment advisors owe fiduciary duties to their clients, much as general partners owe fiduciary duties to limited partners."); *Bestolife Corp. v. Am. Amicable Life*, 5 A.D. 3d 211, 216 (N.Y. App. Div. 2004) (complaint properly pleaded obligation "to provide investment and banking advice and other services . . . so as to raise a factual issue regarding the existence of a fiduciary duty").  Defendants' citation to *Celle v. Barclays Bank P.L.C.*, 48 A.D. 3d 301 (N.Y. App. Div. 2008) for the proposition that a non-discretionary investment advisory relationship does not give rise to a fiduciary relationship is taken out of context and is wholly misleading.  In *Celle*, the Court did not hold that an investment advisor with non-discretionary control owes no fiduciary duty; rather, the *Celle* court found that "**brokers** for nondiscretionary accounts do not owe clients a fiduciary duty."  *Id.* at 302 (*citing Fesseha v. TD Waterhouse Inv. Servs.*, 305 A.D. 2d 268 (App. Div. 2003).  By contrast, in the AC, Plaintiffs specifically allege that Defendants acted as Plaintiffs **investment advisors and investment managers**, not as mere brokers.  Moreover, Plaintiffs have alleged that Defendants had discretionary authority.  *See* ¶22 ("These financial advisors also had authority to make, and did make, investment decisions for their clients.").

[63] ¶¶42-44.

[64] ¶49.

proprietary funds and investments, regardless of whether such investments were in the clients' best interests."[65]  Such conduct is a breach of the duties imposed on Defendants as fiduciaries.[66]

Third, Plaintiffs have unquestionably suffered damages as a result of Defendants' breaches.  As alleged, "all members of the Class were harmed by being forced to pay substantial fees for investment advisory services that they did not receive."[67]  Additionally, "[t]hose members of the Class who were improperly switched from non-proprietary funds and investments to Defendants' proprietary funds and investments suffered the additional harm of being forced to pay upfront fees associated with the switch."[68]  These damages, in the form of fees charged for services never performed, are concrete and naturally flowed from Defendants' breaches.

### B.    PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY IS NOT DUPLICATIVE OF PLAINTIFFS' BREACH OF CONTRACT CLAIM

Defendants' contention that Plaintiffs' breach of fiduciary duty claim should be dismissed as duplicative of the contract claim is misplaced.  The fact that specific duties are contracted for does not excuse a party from facing liabilities as a result of that party's independent fiduciary breaches.[69]  Indeed, "[i]t is well settled that the same conduct which may

---

[65] ¶50; *see also* ¶64 ("Instead of conducting research to understand the investments that the client targeted, [JPMorgan Managing Director Peter] Landgraff blindly recommended high-risk, illiquid JPMorgan funds that bore no resemblance to the types of investment that the client wished to purchase.").

[66] *See Scalp & Blade, Inc. v. Advest, Inc.*, 309 A.D. 2d 219, 232 (N.Y. App. Div. 2003) ("Indeed, plaintiffs have alleged deliberate and flagrant self-dealing and dishonesty on the part of defendants, namely, their unauthorized trading of the fund and speculative and otherwise unsuitable investment decisions with regard to it, transactions allegedly engaged in for defendants' own benefit.").

[67] ¶75.

[68] *Id.*

[69] Significantly, at this pre-discovery phase of the proceedings, Plaintiffs may also plead alternative theories. *See Mervyn v. Nelson Westerberg, Inc.*, 2012 WL 6568338, *3 (N.D. Ill. Dec. 17, 2012) (listing cases); *see also Dimsey v. Bank of N.Y.*, 2006 WL 3740349, * 3 (N.Y. Sup. Ct.. Aug. 24, 2006) ("BNY argues that, although it assumed discretionary control of Dimsey's account, any fiduciary duty it owed to Dimsey was dependent on the Management Agreement.  However, at this pre-discovery phase of the proceedings, Dimsey may plead alternative theories").  Pleading in the alternative is particularly

constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself.'"[70]

Plaintiffs specifically allege that Defendants contracted "to 'exercise discretion' and perform duties 'consistent with applicable fiduciary standards," implicitly acknowledging that certain duties arose outside the contractual relationship.[71] As Judge Scheindlin (interpreting relevant New York law) recently recognized, "once a fiduciary duty is established based on contract, the relationship the contract establishes imposes 'a duty to act with care and loyalty independent of the terms of the contract.'"[72] Insulating Defendants from liability for breach of fiduciary duty on the ground that Plaintiffs allege that they contractually agreed to assume fiduciary duties would simply lead to an absurd result.[73]

## IV.   PLAINTIFFS STATE CLAIMS FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND FOR UNJUST ENRICHMENT

Defendants assert that Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and for unjust enrichment should be dismissed as a result of Plaintiffs' breach of contract claims.[74] Because these claims are asserted by Plaintiffs in the alternative to Plaintiffs' breach of contract claim, Defendants' argument fails.

---

compelling where Defendants both deny the existence of any contractual duties, and seek to dismiss fiduciary claims based on the existence of a contract.

[70] *Mandelblatt v. Devon Stores*, 132 A.D.2d 162, 167-68 (N.Y. App. Div. 1987); *accord Bullmore v. Banc of Am. Secs., LLC*, 485 F. Supp. 2d at 470; *see also Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 463 (N.Y. App. Div. 2007).

[71] *See* ¶30.

[72] *Atmosphere Scis., LLC v. Schneider Advanced Techs., Inc.*, 2012 WL 4240759, *9 (S.D.N.Y. Sept. 19, 2012) (quoting *Bullmore*, 485 F. Supp. 2d at 471).

[73] Moreover, to the extent Defendants argue that no contractual relationship was established, the argument that Plaintiffs' breach of fiduciary duty claims are duplicative of their contract claims is completely unavailing and the proper inquiry should simply focus on whether the advisory relationship between Plaintiffs and Defendants was sufficient to establish a fiduciary duty.

[74] Defs.' Br. at 22.

"A claim for breach of contract does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing when they are brought in the alternative. A party is only precluded from recovering on both theories at the same time."[75] "The law in New York is that a party 'may assert causes of action in both breach of contract and quasi-contract where there is a bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue....'"[76]

Here, Plaintiffs assert their implied covenant claim in the alternative to their claim for breach of contract.[77] Moreover, given Defendants' arguments in opposition to Plaintiffs' breach of contract claim,[78] there appears to be a dispute concerning the existence of a contract and whether it covers Defendants' alleged misconduct.[79] Accordingly, Plaintiffs' implied covenant claim should not be dismissed.[80]

---

[75] *Fantozzi v. Axsys Techs., Inc.*, 2008 WL 4866054, *7 (S.D.N.Y. Nov. 6, 2008).

[76] *Id.* (quoting *Courtien Commc'ns, Ltd. v. Aetna Life Ins. Co.*, 193 F. Supp. 2d 563, 571 (E.D.N.Y. 2002)); *accord Fantozzi*, 2008 WL 4866054, *8 ("New York courts allow the Plaintiff to defer making an election of remedies and damages in cases 'where there is a dispute over the existence, scope, or enforceability of the putative contract.'") (quoting *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 263 (2d Cir. 1999)).

[77] As Defendants' point out (*see* Defs.' Br. at 22), Plaintiffs' breach of the implied covenant and breach of contract claims are contained within the same count of the AC. *See* Am. Compl., Count I. Accordingly, these claims should be deemed to be asserted in the alternative. *See Barbara v. MarineMax, Inc.*, 2012 WL 6025604, at *17 n.10 (E.D.N.Y. Dec. 4, 2012) ("[P]laintiffs do not allege the implied covenant as a separate cause of action. Therefore, their claim of a breach of the implied covenant of good faith and fair dealing may be seen as in-the-alternative of their breach of contract claim.") (citing *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1560 (2d Cir. 1989) ("Leberman was specifically bound by the contract to act in good faith. In addition, a covenant of good faith and fair dealing is implied in every contract governed by New York law like the instant contract.")).

[78] *See* Defs.' Br. at 16-17.

[79] Moreover, resolution of whether a contract exists and covers this dispute is inappropriate at this motion to dismiss stage. *See, e.g., Linares v. Richards*, 2009 WL 2386083, at *5 (E.D.N.Y. Aug. 3, 2009) ("[A]lthough this Court must accept plaintiff's factual allegations concerning his claim for breach of contract as true for purposes of determining whether plaintiff has adequately pleaded that cause of action, the Court need not and, indeed, cannot determine at this stage of the litigation whether a valid contract exists.") (internal citation omitted).

[80] *See also Citi Mgmt. Group, Ltd. v. Highbridge House Ogden, LLC*, 45 A.D.3d 487 (N.Y. App. Div. 2007) (holding that at the motion to dismiss stage, "defendant is permitted to plead in the alternative;"

21

Similarly, "[a] plaintiff may simultaneously allege breach of contract and unjust enrichment in its complaint…."[81] "The fact that [a plaintiff] may only recover on one claim, either contract or quasi-contract, certainly does not preclude him from pleading unjust enrichment in the alternative."[82] Moreover, as with a claim for breach of the implied covenant, "[w]hen there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim."[83]

As with their implied covenant claim, Plaintiffs assert their claim for unjust enrichment in the alternative to their claim for breach of contract. Given this, and the apparent dispute between the parties regarding the existence of a contract and whether it covers Defendants' alleged misconduct, Plaintiffs' unjust enrichment claim should not be dismissed.

## V. PLAINTIFFS HAVE STANDING TO STATE, AND HAVE STATED, CLAIMS AGAINST JPMORGAN CHASE AND JPMIM

Plaintiffs have pled that both JPMorgan Chase and JPMIM were integral components of Defendants' plan to sell proprietary JPMorgan funds and investments to as many clients as possible regardless of whether the investments were in the clients' best interest. As alleged,

---

therefore, plaintiff's "claims for breach of the implied covenant of good faith and fair dealing…should not have been dismissed as duplicative of the breach-of-contract cause of action at this juncture").

[81] *Fantozzi*, 2008 WL 4866054, *7 (quoting *Bazak Int'l Corp. v. Tarrant Apparel Group*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004)).

[82] *Maalouf v. Salomon Smith Barney, Inc.*, 2003 WL 1858153, at *7 (S.D.N.Y. Apr. 10, 2003) (citations omitted) (emphasis in original); *accord Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996) (finding unjust enrichment claim properly pleaded in alternative to breach of contract claim); *Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003) (breach of contract and quasi-contract or unjust enrichment claims properly pleaded in alternative).

[83] *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007); *see id.* ("This is permissible under the liberal alternative pleading policy under Rule 8(e)(2) of the Federal Rules.") (citation omitted); *Linares*, 2009 WL 2386083, at *5 ("courts construing New York law permit pleadings containing claims for both breach of contract and unjust enrichment where a determination as to whether a valid contract exists has not been made or the validity of the contract is disputed") (citations omitted).

JPMorgan Chase is a global financial institution that "controlled JPMC Bank and JPMS LLC, through which Plaintiffs and their accounts were managed."[84]  Far from alleging that JPMC Bank and JPMS LLC were mere third parties whose separate and independent actions caused Plaintiffs' injuries, Plaintiffs have specifically identified numerous facts that demonstrate that JPMorgan Chase and JPMIM actively participated in the breaches alleged.

Defendants' arguments that Plaintiffs lack standing and cannot pursue claims against JPMorgan Chase and JPMIM rest almost exclusively on the contention that Plaintiffs have only pled that they entered into financial advisory agreements with JPMC Bank and JPMS.[85]  This does not preclude Plaintiffs' properly stated unjust enrichment claims against JPMC Bank and JPMS.  Moreover, as noted above, "liability for breach of fiduciary duty is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary."[86]  Instead, it is the nature of the relationship that is controlling.[87]  Here, Plaintiffs have adequately alleged that JPMorgan Chase and JPMIM provided the requisite investment advice giving rise to a fiduciary relationship.

For example, JPMorgan Chase described "Asset Management" as one of its "business segments" on its annual Form 10-K reports, and provided a chart listing "Investment Management" and "Private Wealth Management" as businesses in which JPMorgan Chase engages.[88]  JPMorgan Chase decisions regarding asset management and private wealth management clients are at the heart of Plaintiffs' allegations.  Plaintiffs further allege that the investment advice provided to Plaintiffs and putative class members "emanated from the very

---

[84] ¶17.

[85] Defs.' Br. at 23.

[86] *Sergeants Benevolent*, 19 A.D. 3d at 110 (internal quotation omitted).

[87] As the court also recognized in *Sergeants Benevolent,* alleging that non-signatories to a contract are liable as fiduciaries "does not involve an attempt to pierce the corporate veil."  19 A.D. 3d at 110.

[88] ¶17.

top" of JPMorgan Chase's senior management.[89]   As alleged, JPMorgan Chase Board Member James "Jes" Staley convinced Jamie Dimon, JPMorgan Chase CEO and Chairman of the Board, that "the Company should ramp up its focus on steering clients into proprietary funds and investments in order to collect more fees and 'earn' more profits."[90]   JPMorgan Chase also issued press releases announcing the launch of the Chase Strategic Portfolio, and "collected upfront fees for steering clients from non-proprietary fund families into JPM-sponsored fund families."[91]   Thus, JPMorgan Chase's decision to corral clients into proprietary funds in order to collect fees, and without conducting due diligence to determine whether such investments were in their clients' best interest, directly gave rise to Plaintiffs' claims.

Moreover, as alleged in the AC, JPMIM is a wholly owned subsidiary of JPMorgan Chase and a registered investment advisor.[92]   As noted in JPMIM's Form ADV, JPMIM "is the primary U.S. investment advisory branch of J.P. Morgan Asset Management ("JPMAM"), which is the marketing name for the asset management business" of JPMorgan Chase.[93]   As further detailed in JPMIM's Form ADV, among other duties, JPMIM:

- provides discretionary and non-discretionary investment management services and products to institutional clients and individual investors.  As of March 31, 2012, JPMIM had $723 billion of assets under management on a discretionary basis and over $6 billion of assets under management on a non-discretionary basis;

- JPMIM makes investments for clients in accordance with mutually agreed upon written investment guidelines and provides continuous supervision of client portfolios; and

---

[89] ¶44.

[90] ¶44.

[91] ¶¶46-48.

[92] ¶16.

[93] *See* Exhibit 1 to Exhibit A hereto (Affidavit of Matthew T. Slater).

- JPMIM serves as an investment manager in one or more "wrap fee" programs under which the client pays a specified fee to the program sponsor for investment advisory services and the execution of client transactions.[94]

Accordingly, Plaintiffs have properly alleged that JPMIM, as JPMorgan Chase's "primary U.S. investment advisory branch," provided the investment advice to Plaintiffs that gives rise to their claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the AC should be denied.

Dated: January 31, 2013

/s/ Matthew T. Slater

| | |
|---|---|
| Jay W. Eisenhofer | Matthew T. Slater |
| Dan L. Berger | Scott Forrest Hessell |
| Jeff A. Almeida | Paul Ethan Slater |
| GRANT & EISENHOFER P.A. | SPERLING & SLATER, PC |
| 123 Justison Street | 55 West Monroe Street |
| Wilmington, DE 19801 | Suite 3200 |
| (302) 622-7000 | Chicago, IL 60603 |
| | (312) 641-3200 |
| Edward H. Glenn, Jr. | |
| Jacob H. Zamansky | *Attorneys for Plaintiffs* |
| Kevin D. Galbraith | |

Edward H. Glenn, Jr.
Jacob H. Zamansky
Kevin D. Galbraith
ZAMANSKY & ASSOCIATES, LLC
50 Broadway
32nd Floor
New York, NY 10004
(212) 742-1414

Joseph H. Meltzer
Peter H. LeVan, Jr.
Shannon O. Braden
KESSLER TOPAZ MELTZER
   AND CHECK LLP
280 King of Prussia Road
Radnor, PA 19807
(610) 667-7706

---

[94] *Id.*